James TOOLE

v.

STATE of Rhode Island.

No. 99–40–C.A.

Supreme Court of Rhode Island.

March 3, 2000.

Richard K. Corley, Providence, for plaintiff.

Aaron L. Weisman, Providence, for defendant.

Before WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG JJ.

## OPINION

PER CURIAM.

The petitioner, James Toole (Toole), appeals from the Superior Court's denial of his application for post-conviction relief. After his conviction on three counts of first-degree sexual assault upon a child under the age of thirteen and on two counts of first-degree sexual assault by force and coercion, the court sentenced Toole to five concurrent life sentences.[1] Toole contends that his convictions should be overturned because the Public Defender's Office (PD) had a conflict of interest in representing him and because his PD attorney provided constitutionally ineffective legal representation during his trial. After reviewing the parties' prebriefing statements, we ordered Toole to show cause why this appeal should not be summarily decided. Because no cause has been shown, we proceed to resolve the appeal at this time.

Toole appealed the order denying his post-conviction application to this Court, whereupon we vacated the order and remanded the case back to the Superior Court. *Toole v. State,* 713 A.2d 1264, 1266 (R.I.1998) (*Toole II* ). We concluded that the trial court "was required to give [Toole] an opportunity to reply to [the court's] proposed dismissal" of his post-conviction application for relief. *Id.* at 1265. In addition, we stated that "the trial

justice is not required to conduct an evidentiary hearing if, from [Toole's] reply, the trial justice determines that no genuine issue of material fact exists and that, therefore, no need for an evidentiary hearing exists." *Id.* at 1266.

Upon remand, the trial justice issued a second memorandum and order that again denied Toole's application for post-conviction relief without an evidentiary hearing. On the conflict-of-interest issue, the court first noted that Toole had conceded in his memorandum that no evidentiary hearing was required because it involved purely a legal analysis. The court also ruled that the PD was not laboring under a conflict of interest during Toole's trial because the alleged conflict—the PD's representation of Toole after he had been slated to testify in a different case against another defendant also represented by the PD—was resolved approximately two months before the commencement of Toole's trial. With respect to the claim of ineffective assistance of counsel, the motion justice found that Toole failed to assert any genuine issues of material fact that would have warranted an evidentiary hearing on the subject. We address these issues below.

## I

### Conflict of Interest

A trial court is "under a duty to properly investigate defense counsel's assertion of a conflict of interest. The failure to so investigate violate[s] the defendant's right to effective assistance of counsel." *State v. Gonsalves,* 476 A.2d 108, 113 (R.I.1984). However, "[i]n order to establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." *Cuyler v. Sullivan,* 446 U.S. 335, 348, 100 S.Ct. 1708, 1718, 64 L.Ed.2d 333, 346–47 (1980).

---

1. The underlying facts pertaining to Toole's crimes are recounted in *State v. Toole,* 640 A.2d 965, 968–69 (R.I.1994) (*Toole I* ), where we affirmed the convictions.

After Toole's indictment, the PD initially assigned assistant public defender Joseph DeCaporale (DeCaporale) to represent Toole on or about May 4, 1992. (Later in the pretrial proceedings, Public Defender Richard Casparian (Casparian) replaced DeCaporale.) The next day, on May 5, 1992, the PD sent out a letter signed by Casparian informing the Superior Court that the PD had a conflict in representing Toole because he was a witness for the prosecution in a case pending against another PD client, Michael Richardson (Richardson), who was facing a murder charge. Toole had been a Pawtucket police officer and had participated in the arrest of Michael Richardson for murder and child molestation. Thus, in the state's prosecution of Richardson, Toole was expected to testify as a state witness. The PD's letter suggested that the Superior Court assign court-appointed counsel. The trial justice, however, concluded that, by the time of trial, any alleged conflict of interest no longer existed because Richardson's case had been resolved by a plea agreement some two months before the parties convened for Toole's trial.

On appeal, Toole argues that the trial justice erred in ruling that he had to show prejudice as a result of the alleged conflict of interest and in failing to conduct an inquiry into the putative conflict after the Superior Court was first notified about it. He also suggests that the trial justice's failure to make an inquiry into the conflict-of-interest issue before trial warrants overturning his conviction.

In response, the state argues that the consummation of Richardson's plea agreement months before Toole's trial began eliminated any potential conflict of interest for the PD during and in the months immediately preceding the trial. The state further points out that Toole's trial counsel, Casparian, had no recollection of Richardson and, in any event, that no conflict of interest existed for the PD for at least two months before and during Toole's trial.

■▬ The trial justice, we hold, was under no duty to inquire about any alleged conflicts of interest because nothing in this record indicates that he either "[knew] or reasonably should [have known] that a particular conflict exist[ed]" before or during the trial. *Wood v. Georgia,* 450 U.S. 261, 272 n. 18, 101 S.Ct. 1097, 1104 n. 18, 67 L.Ed.2d 220, 231 n. 18 (1981) (quoting *Cuyler,* 446 U.S. at 347, 100 S.Ct. at 1717, 64 L.Ed.2d at 345–46). Casparian's letter informing the Superior Court of a possible conflict was forwarded to a motion justice before the start of bail review proceedings when the Richardson case was still pending and when this case was still many months away from trial (Toole's actual trial occurred about nine months later). Moreover, it appears that the trial justice properly concluded that, at the time of the trial, no such conflict existed because the Richardson case had ended in a plea agreement a few months prior to Toole's trial.

In *Hughes v. State,* 656 A.2d 971, 972 (R.I.1995) (per curiam), this Court ruled that, pursuant to Rules 1.7(b) and 1.10 of the Supreme Court Rules of Professional Conduct, the PD may not represent multiple clients if the representation of one client materially limits the representation of another, unless the clients consent after consultation. In *Hughes,* we decided that by the time the PD represented the defendant at the appellate stage no conflict existed because, among other things, the case for the PD's other client had been dismissed. 656 A.2d at 972–73. "In the absence of any actual or potential conflict, the Office of the Public Defender was free to represent [that defendant] on appeal." *Id.* at 973. Similarly, there was no actual or potential conflict in this case at the time of Toole's trial because the Richardson case had ended months before his trial. Indeed, because the Richardson matter was disposed of by a plea bargain, Toole was not even required to serve as a witness in that other case. In such a situation no conflict should be imputed to the

PD. *See People v. Trichilo*, 230 A.D.2d 926, 646 N.Y.S.2d 898, 901–02 (1996).

## II

### Ineffective Assistance of Counsel

Toole further argues that his defense counsel provided ineffective assistance of counsel in failing to call the victim's pediatrician as a witness and in failing to preserve certain issues through proper objection at trial. He contends that the pediatrician would have testified that he did not find any physical evidence of sexual abuse during his medical examinations of the victim. Toole contends that the trial justice erred in not holding an evidentiary hearing on the failure of defense counsel to preserve certain issues through proper objections at trial. Toole insists that he should have been allowed to prove at an evidentiary hearing how these supposed errors in failing to lodge proper objections affected the trial and its verdict. He states that there were genuine issues of material fact regarding defense counsel's failure to object properly at various points during the trial.

The state argues that no evidentiary hearing was required because Toole's allegations did not indicate that Casparian's representation fell below "the wide range of reasonable professional assistance and sound trial strategy" that passes legal muster, nor did they suggest "that, but for counsel's [alleged] errors, the [verdict] * * * would have been different." *Hughes*, 656 A.2d at 972. The state argues that the failure of Casparian to raise certain objections at trial cannot form the basis of claiming ineffective assistance of counsel because his failure to object might have been strategic, and, in any event, the evidence of Toole's guilt was overwhelming. In addition, the state argues that the failure to call the pediatrician as a witness was not outside the realm of reasonable professional assistance because the state did not need to corroborate the testimony of the victim in a sexual assault case. The state asserts again that the evidence of guilt was so overwhelming that the pediatrician's testimony would not have made a difference in the trial outcome.

In reviewing a claim for ineffective assistance of counsel, we have stated that the benchmark issue is whether "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Tarvis v. Moran*, 551 A.2d 699, 700 (R.I.1988). "The burden is placed on the defendant to show that the trial counsel's errors violated his or her Sixth Amendment guarantee to counsel and that he or she was prejudiced by counsel's inadequate performance." *Id.* at 700–01. "[A] defendant must show that counsel's performance was deficient and that the deficient performance prejudiced the defense." *Hughes*, 656 A.2d at 972 (citing *Brown v. Moran*, 534 A.2d 180, 182 (R.I.1987)); *see also Powers v. State*, 734 A.2d 508, 522 (R.I.1999) (holding that defense counsel's decision not to call an expert witness was purely a strategic decision not amounting to ineffective counsel).

This Court has also made clear that mere tactical decisions, though ill-advised, do not by themselves constitute ineffective assistance of counsel. *See State v. D'Alo*, 477 A.2d 89 (R.I.1984). In *D'Alo* we explained "a choice between trial tactics, which appears unwise only in hindsight, does not constitute constitutionally-defective representation under the reasonably competent assistance standard." *Id.* at 92 (quoting *United States v. Bosch*, 584 F.2d 1113, 1121 (1st Cir.1978)).

The first allegation of ineffective assistance of counsel concerns the failure of defense counsel to call the victim's pediatrician to testify. In reviewing the statements of the victim concerning Toole's specific conduct in sexually assaulting her, it appears that some of the sexually abusive conduct in question would not have produced physical symptoms. *See Toole I*, 640 A.2d at 968. For that conduct, the pediatrician's proposed testimony would

not have made a difference. And even though his exams had not revealed any physical indication of sexual abuse, the pediatrician would not have been able to testify that, in his expert opinion, no sexual abuse had occurred. As a result, any equivocal testimony from the pediatrician on this issue would not have been enough to change the outcome in this case because the prosecution introduced substantial evidence of Toole's guilt at trial. In addition to the victim, the victim's brothers also testified. One brother testified that he discussed his sister's allegations of sexual abuse with Toole (his father) and Toole admitted to him that "he was sick, and that he * * * [was] sorry for what he * * * [had] done to [his daughter]." *Id.* at 969. In addition, Toole had written incriminating letters to the victim, which were introduced at trial. In one letter, Toole admitted that he "only had this sickness with you, this is why I am lost as to what caused me to do these horrible things" and that he was going to make an appointment with a doctor one of his friends had recommended to him. He also mentioned having heard a sermon on sexual molestation, believing that the minister was talking directly to him and "feeling all the pain and selfhatred [*sic*] bubbling inside." Therefore, given these incriminating admissions, Toole was not prejudiced by the failure of defense counsel to call the victim's pediatrician to testify.

On the issue of failing "to preserve various (but unarticulated in his memo) objections for appellate review," the trial justice commented that Toole's written submissions were "bereft of any other specific, identifiable issues which this Court might target for his demand for an evidentiary hearing." In the end, the court stated that Toole's trial counsel had represented him with "uncommon zeal and vigor, and in no way was [Toole] disadvantaged thereby."

■ It appears to us that defense counsel's failure to object at certain points during the trial may have reflected legitimate defense strategy, and such tactics do not amount to constitutionally ineffective counsel. *See D'Alo,* 477 A.2d at 92. Sometimes counsel may refrain from raising an objection in an attempt not to alienate the jury or because the evidence in question is immaterial. Additionally, objecting might only draw the jury's attention to damaging facts that it might otherwise minimize, ignore, or overlook. At other points in the trial, defense counsel objected but did not offer specific grounds for the objection, thus precluding review. *See Toole I,* 640 A.2d at 973. Yet any error in raising these objections appears to us to have been harmless in light of the substantial other evidence inculpating Toole.

■ Finally, Toole asserts that the trial justice erred in not holding an evidentiary hearing concerning his attorney's alleged failure to raise proper objections during the trial and in not calling the victim's pediatrician to testify. However, in light of Toole's burden in demonstrating ineffective assistance of counsel, he has likewise failed to establish the existence of genuine issues of material fact that would warrant an evidentiary hearing. As the trial justice noted, Toole's vague assertions about defense counsel not having properly preserved objections were inadequate to trigger such a hearing. He did not, moreover, focus upon any specific instances and their alleged consequences to his defense so that the trial justice could assess the potential validity of Toole's assertions. In analogizing this situation to a summary judgment motion, the trial justice in his memorandum and order established that no genuine issues of material fact existed concerning whether defense counsel's alleged ineffective objections so prejudiced Toole that the trial cannot be relied upon as having produced a just result. *See Palmigiano v. State,* 120 R.I. 402, 404, 387 A.2d 1382, 1384 (1978) (holding that "a trial justice [may] dismiss an application [for post-conviction relief] whenever, based upon the record, the application, and the answer, he finds that no genuine issue of material fact exists"). The burden then

shifted to Toole to show that genuine issues of material fact were in dispute. Toole's memorandum to the trial justice failed to articulate specifically the existence of such genuine issues of material fact. In addition, even if defense counsel's general objections constituted error, it appears to us that such errors were harmless in view of the other inculpatory evidence at Toole's trial.

### Conclusion

Because no conflict of interest for defense counsel was apparent at the time of the Toole's trial and because defense counsel does not appear to have provided constitutionally ineffective assistance of counsel, we conclude that the trial justice did not err in denying Toole's application for post-conviction relief without an evidentiary hearing. Hence, Toole's appeal is denied and dismissed.