Lamphone **VORGVONGSA**

v.

**STATE of Rhode Island.**

No. 2000–152–C.A.

Supreme Court of Rhode Island.

Dec. 3, 2001.

---

Mark Laroche, Providence, for Plaintiff.

Jane M. McSoley, Aaron L. Weisman, Providence, for Defendant.

Present: WILLIAMS, C.J., LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

Lamphone Vorgvongsa (Vorgvongsa or applicant) was originally tried before a Superior Court jury and convicted on a charge of first-degree murder. His motion for a new trial was granted, and the state petitioned this Court for certiorari to review that decision. This Court quashed the order granting a new trial and remanded the case to the Superior Court with directions to reinstate Vorgvongsa's conviction and to impose sentence. On remand, the Superior Court reinstated the conviction and sentenced Vorgvongsa to life imprisonment. Vorgvongsa appealed, and this Court denied and dismissed his appeal. Vorgvongsa later filed an application for postconviction relief, claiming a due process violation and ineffective assistance by his trial counsel. After a hearing, his application was denied. Vorgvongsa now appeals that decision.

At a prebriefing conference before a justice of this Court, both Vorgvongsa and the state were ordered to appear and show cause why this appeal should not be summarily decided. The parties did appear. After hearing their arguments and considering their legal memoranda, we conclude that cause has not been shown, and we proceed to summarily decide the appeal.

### Facts

The facts of this case as set forth in our opinions in *State v. Vorgvongsa*, 670 A.2d

1250, 1251–52 (R.I.1996) (*Vorgvongsa I*) and *State v. Vorgvongsa*, 692 A.2d 1194, 1195–96 (R.I.1997) (*Vorgvongsa II*) are as follows:

"On March 2, 1990, some friends of Viengsavoth Syharath who knew he was leaving this state to take up residence in California gathered in a second-floor apartment at 29 Moy Street in Providence to wish him well. At about 10:15 p.m., the party guests were enjoying food, beer, and cognac while seated on the floor in the unfurnished living room in the apartment, when one of the guests, the victim, Phommachanh, went over to Leuthavone, and offered him a drink of cognac. Leuthavone refused the cognac, and Phommachanh, speaking in Laotian, called him a 'chicken.' Leuthavone, angered by that name, got up from his seated position and pushed Phommachanh. A pushing and grabbing melee erupted, and in short order, some guests began scattering for shelter while others attempted to quell the fracas. Within minutes, despite broken plates and glass all over the living room floor, peace settled in on the festive skirmish, but the party spirit had understandably dissipated and the guests began leaving the apartment. Leuthavone and the defendant, Vorgvongsa, were the first to leave. Others followed and gathered on the sidewalk in front of the apartment to bid their last farewells. Leuthavone and Vorgvongsa, however, were not among those talking on the sidewalk, but Phommachanh, whose fertile 'chicken' epithet had triggered the party fracas was there, attempting to persuade the party guests to return to the apartment and resume the social occasion. As Phommachanh was pleading with guests, a silver Toyota, with Leuthavone and Vorgvongsa as driver and passenger, drove up to the scene. Leuthavone exited the Toyota and approached Phommachanh, speaking briefly to him in Laotian. The others present, assuming that all was now well, decided to return to the apartment. As they did, Leuthavone and Vorgvongsa remained outside. Within minutes, however, Leuthavone and Vorgvongsa did reenter the apartment together.

"They did not, however, join the other partygoers in the living room. Instead, they walked directly through the living room and into the kitchen. At this point, Phommachanh, who was with the other guests, walked over to the kitchen and extended his hand to shake hands with Leuthavone and to apologize for having earlier called him a 'chicken.' Without warning, Leuthavone pushed Phommachanh back into the living room and came after Phommachanh with a handgun. Immediately behind Leuthavone, the defendant Vorgvongsa rushed out, also with gun in hand. Phommachanh tried to find shelter by hiding behind some of the partygoers and was moving about the living room. Vorgvongsa was pointing his handgun around the room, looking for Phommachanh, and when he located him, Vorgvongsa attempted to shoot him, but the handgun misfired several times. Vorgvongsa then began banging the gun on its side, attempting to remedy the cause of its misfiring. The party guests began running for cover. Leuthavone also attempted to shoot Phommachanh, but his weapon also misfired. Leuthavone then unloaded and reloaded his gun, hoping that it would then properly function. As Leuthavone was reloading his gun, one of the partygoers, sensing that Phommachanh was targeted for doom, pushed Phommachanh toward a stairway exit leading from the apartment and told him to go. Phommachanh ran down the stairway. Leutha-

vone and Vorgvongsa then followed Phommachanh down the stairway, and about fifteen seconds later three shots were heard from the Moy Street sidewalk area. At that, Annette St. Louis (St. Louis) one of the ill-fated party guests, who fortuitously during the apartment gun chase had telephoned for 911 assistance from an apartment bedroom, ran out of the bedroom and saw that all of the party guests except Phommachanh, Leuthavone, and Vorgvongsa were present. She then ran down the exit stairway and out onto Moy Street. She did not see Leuthavone or the defendant, Vorgvongsa, and she noticed that the silver Toyota they had arrived in earlier was gone. She looked a short distance away and saw rescue-wagon personnel exiting their vehicle to tend to someone lying face down on the sidewalk. It was Phommachanh. He had been fatally shot in the back.

"A short time later police responded and, after preliminary questioning of some of the party guests, learned that Leuthavone lived nearby at 34 Homer Street. Police went to that address, saw the silver Toyota parked there, and while surveilling the car, observed Leuthavone and another person, not Vorgvongsa, leave 34 Homer Street and enter the Toyota. As the police approached, Leuthavone, seated in the passenger seat, attempted to hide and conceal a gun under his seat. He was arrested and the gun seized. When the gun was later test fired, the test-fired bullet, when compared with the fatal bullet recovered from Phommachanh's body, confirmed that the bullet that killed Phommachanh had not been fired from Leuthavone's gun. Vorgvongsa was later arrested, but his gun was never found." *Vorgvongsa II,* 692 A.2d at 1195–96 (quoting *Vorgvongsa I,* 670 A.2d at 1251–52).

Vorgvongsa raises multiple issues in his appeal from the denial of his application for postconviction relief. Among those are eight issues that were not raised in his postconviction relief application or during the hearing on that application. In his application he had contended that his due process rights had been violated at his original trial because the trial jury's first-degree murder verdict in that case was against the weight of the evidence and that he received ineffective assistance of counsel at trial.

■ Under G.L.1956 § 10–9.1–1(a)(1), postconviction relief is available to a defendant convicted of a crime who contends that his original conviction or sentence violated rights secured him by our state or the federal constitution. The hearing justice's findings made at such a hearing "are entitled to stand undisturbed on appeal in the absence of clear error or a showing that material evidence was overlooked or misconceived." *Simpson v. State,* 769 A.2d 1257, 1265 (R.I.2001) (quoting *Heath v. Vose,* 747 A.2d 475, 477 (R.I.2000)). However, on appeal "the ultimate determination concerning whether [a defendant's] constitutional rights have been infringed must be reviewed *de novo.*" *Simpson,* 769 A.2d at 1265 (quoting *Powers v. State,* 734 A.2d 508, 514 (R.I.1999)). In carrying out our *de novo* review in the context of reviewing an alleged violation of a defendant's constitutional rights, we note that "a reviewing court should take care * * * to review findings of historical fact only for clear error and to give due weight to inferences drawn from those facts * * *." *Simpson,* 769 A.2d at 1265–66 (quoting *Ornelas v. United States,* 517 U.S. 690, 699, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911, 920 (1996)). Therefore, although we undertake here to review *de novo* Vorgvongsa's appeal challenging the hearing justice's denial of his

application for postconviction relief, we give appropriate deference to the fact findings made by the postconviction relief hearing justice.

## I. Newly Raised Claims

■ On appeal Vorgvongsa raises eight issues that had not been raised or considered at his postconviction relief hearing. Those new issues include the following: (1) ineffective assistance of counsel in not requesting an instruction on aiding and abetting; (2) ineffective assistance of counsel in not requesting an instruction that inconsistent statements constitute substantive proof of innocence; (3) ineffective assistance of counsel in not obtaining blood, hair, and clothing samples; (4) ineffective assistance of counsel in not pursuing certain issues on direct appeal; (5) ineffective assistance of counsel by the applicant's postconviction relief hearing attorney; (6) the failure of the trial justice to instruct as requested on credibility; (7) the failure of the trial justice to permit the jury to consider sworn testimony elicited at a previous mistrial; and (8) the trial justice's improper instruction on aiding and abetting.

According to § 10–9.1–8 of the postconviction relief statute:

"All grounds for relief available to an applicant at the time he or she commences a proceeding under this chapter must be raised in his or her original, or a supplemental or amended, application. Any ground finally adjudicated or not so raised, or knowingly, voluntarily and intelligently waived in the proceeding that resulted in the conviction or sentence or in any other proceeding the applicant has taken to secure relief, may not be the basis for a subsequent application, unless the court finds that in the interest of justice the applicant should be permitted to assert such a ground for relief."

■ Additionally, "[a]ccording to our well-settled 'raise or waive' rule, issues that present themselves at trial and that are not preserved by a specific objection at trial, 'sufficiently focused so as to call the trial justice's attention to the basis for said objection, may not be considered on appeal.'" *State v. Anderson*, 752 A.2d 946, 948 (R.I.2000) (quoting *State v. Morris*, 744 A.2d 850, 858–59 (R.I.2000)).

Based on the language of § 10–9.1–8 and well-settled case law, the applicant may not now for the first time raise the above eight issues before this Court because of our general raise or waive rule, and we do not find anything in those particular issues that could trigger our "in the interests of justice" consideration of those new issues. Vorgvongsa has not provided us with any particular reasons why these issues were not properly raised during his postconviction relief hearing. We have, however, undertaken to consider his claim of ineffective assistance of counsel that is now being levied against the attorney who represented him at his postconviction relief hearing. From our *de novo* examination of the record before us we are satisfied that Vorgvongsa's claim of ineffective assistance of counsel at his postconviction relief hearing is totally lacking in merit and does not warrant any further discussion by this Court.

## II. Due Process Claim

■ Vorgvongsa contends that his original conviction was against the weight of the evidence presented at his trial and could not have supported his conviction of first-degree murder beyond a reasonable doubt. However, this Court previously and clearly determined in *Vorgvongsa I* that the evidence presented at his original trial was sufficient for the jury to find him

guilty beyond a reasonable doubt. *Vorgvongsa I,* 670 A.2d at 1255. That finding by this Court could not at Vorgvongsa's later postconviction relief hearing be relitigated because relitigation was barred by *res judicata* preclusion. *Carillo v. Moran,* 463 A.2d 178, 182 (R.I. 1983). Therefore, Vorgvongsa's renewed claim that the original trial jury's verdict was against the weight of the trial evidence has been previously decided and is not properly before this Court.

### III. Ineffective Assistance of Counsel Claims

Finally, Vorgvongsa alleges on appeal that his trial counsel, private attorney John F. Cicilline, provided ineffective assistance of counsel in the following four areas: (1) failing to introduce defense witness's original ballistics report; (2) failing to impeach a state's witness with her earlier testimony from Leuthavone's trial; (3) failing to move for a continuance because of pretrial publicity; and (4) failing to move for a mistrial after the prosecution made improper comments during closing argument.

■ "In reviewing a claim for ineffective assistance of counsel, we have stated that the benchmark issue is whether 'counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.'" *Toole v. State,* 748 A.2d 806, 809 (R.I.2000) (per curiam) (quoting *Tarvis v. Moran,* 551 A.2d 699, 700 (R.I.1988)). It was the applicant's burden to show at his postconviction relief hearing that he was prejudiced by his trial counsel's inadequate performance, that "counsel's performance was deficient and that the deficient performance prejudiced the defense." *Toole,* 748 A.2d at 809 (quoting *Hughes v. State,* 656 A.2d 971, 972 (R.I.1995) (per curiam)). This Court

will overturn the findings of a hearing justice at a postconviction relief proceeding "only when the hearing justice was clearly wrong or when it is clear that material evidence has been overlooked or misconceived." *State v. Brennan,* 627 A.2d 842, 845 (R.I.1993). This Court also has noted that a claim of ineffective assistance of counsel against privately hired defense counsel is generally not viable "unless the attorney's representation [was] so lacking that the trial ha[d] become a farce and a mockery of justice * * *." *State v. Dunn,* 726 A.2d 1142, 1146 n. 4 (R.I.1999), but we do not rest our decision in this appeal upon that premise. Instead, we address Vorgvongsa's appellate issues that are properly before us in this appeal.

■ Vorgvongsa asserts that his trial counsel acted incompetently in not introducing a ballistics report from a defense witness, Carl Majesky. He also contends that his trial attorney was deficient in not undertaking to impeach one of the state's witnesses. His trial counsel, John F. Cicilline, an experienced, prominent defense attorney, testified why Majesky's ballistics report was not offered. Attorney Cicilline testified that Majesky's original ballistics report initially differed from the state's ballistics report in that Majesky opined that it was Leuthavone's gun that had fired the bullet recovered from Phommachanh's body. However, one week before trial, after reexamining the bullet with the state's ballistics expert, Dr. Robert Hathaway, at the University of Rhode Island crime laboratory, Majesky changed his report so it agreed with Hathaway's opinion that the bullet retrieved from Phommachanh's body did not come from Leuthavone's gun. Obviously, Majesky's original report would have been of no assistance to Vorgvongsa at trial because Majesky, having subsequently changed his original findings, now was agreeing with the state's

ballistics report prepared by Dr. Hathaway. Attorney Cicilline testified in the postconviction relief hearing that he was not pleased that Majesky had changed his opinion but had no choice but to not call him to testify because Majesky's report now confirmed the accuracy of the state's ballistics report. As the hearing justice noted below, had Majesky's original report been offered and admitted, that fact itself may have generated a claim of ineffective assistance of counsel.

▪ Similarly, Attorney Cicilline made a tactical decision at trial to not attempt to impeach one of the state's witnesses, Annette St. Louis, with regard to her previous testimony given at Leuthavone's trial. At that trial, St. Louis had testified that she saw people chase Phommachanh out of the apartment but could not identify them. At Vorgvongsa's trial, however, she testified that when the shooting scare started she hurried children into a nearby bedroom away from the gunmen and did not say anything about Phommachanh being chased out of the apartment. She did testify, however, that someone had pushed Phommachanh out toward a stairway exit. Attorney Cicilline explained at the postconviction relief hearing why he did not attempt to impeach St. Louis. His explanation was that he wanted to keep her as appearing to be the only credible witness in the case and that, left unchallenged, her testimony might create doubt about whether Vorgvongsa could have shot Phommachanh without any of the party guests actually seeing the incident. This was understandably a reasonable tactical decision for trial counsel to make in light of the evidence that had been presented against Vorgvongsa during the trial. It is well established that tactical decisions by trial counsel, even if ill-advised, do not by themselves constitute ineffective assistance of counsel. *Toole*, 748 A.2d at 809; *see*

*also State v. Duggan*, 414 A.2d 788, 791–93 (R.I.1980).

▪ Vorgvongsa's next allegation of ineffective assistance of counsel centers upon Attorney Cicilline's failure to move for a trial continuance on the basis of alleged unfavorable pretrial publicity resulting from an article appearing in the *Providence Journal* on the morning that the trial jury was being impaneled. The article labeled Vorgvongsa as a "gangster" who had terrorized the Southeast Asian community. The record reveals that the trial justice, when made aware of the article, immediately questioned the prospective jurors about whether any had read any newspaper article concerning the case that had appeared in any local newspaper, and they all answered in the negative. The trial justice then instructed the jurors not to read any newspaper articles about the case during the trial. There is absolutely no indication whatever from the record before us that the newspaper article in question had in any way prejudiced the applicant. Vorgvongsa's bare assertion on this point is totally lacking of any merit.

▪ Vorgvongsa's final salvo in his claim of ineffective assistance of counsel concerns Attorney Cicilline's failing to move for a mistrial when the prosecutor, during his final summation to the trial jury, stated that:

> "[Vorgvongsa and Leuthavone] came out [of the kitchen] with the guns drawn, blazing like a Wild West movie * * * [Vorgvongsa] killed another human being in our town and endangered the lives of everybody in that apartment without any care or compunction of who got hurt or who was in the way * * * I am asking you not to be desensitized to the violence that we often see in our country. Look at this particular case for what it is, the nightmare it was."

We are satisfied based upon the facts present in this case that the prosecutor was entitled to make fair and vigorous comment upon that evidence. Our *de novo* review of the prosecutor's remarks do not reveal to us that his remarks " 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.' " *Darden v. Wainwright,* 477 U.S. 168, 181, 106 S.Ct. 2464, 2471, 91 L.Ed.2d 144, 157, *reh'g denied,* 478 U.S. 1036, 107 S.Ct. 24, 92 L.Ed.2d 774 (1986). Thus, any motion for mistrial by Attorney Cicilline would have been both futile and unwarranted.

We are satisfied that the prosecutor's comment can be viewed as an accurate comment on the trial evidence regarding Vorgvongsa's wild and frenzied running from the kitchen and pointing and attempting to fire his misfiring gun at all the partygoers in the apartment. Likewise, the prosecutor's admonition to the jury "not to be desensitized to the violence that we often see in our country" falls within the bounds of acceptable argument. We have "legitimated this type of 'call to duty' comment" in cases in which the prosecutor refrains from emphasizing the remark to the point of distracting the jurors from a fair consideration of the evidence. *State v. Mastracchio,* 546 A.2d 165, 174 (R.I.1988). Additionally, any question concerning the prejudicial effect that the prosecutor's comments might have had upon the trial jury was clearly dispelled by the trial justice's closing instruction, during which he told the jurors not to accept the closing statements of counsel as evidence and that the jurors were not there to solve the problems of the world.

Based on the foregoing, the applicant's appeal is denied and dismissed. The judgment entered by the Superior Court following Vorgvongsa's postconviction hearing is affirmed, and the papers in this case are to be remanded to the Superior Court.