Edmond J. BROWN

v.

**STATE of Rhode Island.**

No. 2002–393–M.P.

Supreme Court of Rhode Island.

March 3, 2004.

Joseph F. Hook, Middletown, for Plaintiff.

Virginia M. McGinn, Providence, for Defendant.

Present: WILLIAMS, C.J., FLANDERS, GOLDBERG, FLAHERTY, and SUTTELL, JJ.

## OPINION

PER CURIAM.

We review here on certiorari the denial of Edmond J. Brown's (Brown or applicant) application for post-conviction relief. Discerning no merit in any of the arguments he raises, we affirm the Superior Court judgment denying this petition.

Convicted of multiple counts of sexual assault and child molestation committed against his stepdaughter,[1] Brown appealed to this Court, which vacated the convictions on appeal and remanded for a new trial. *See State v. Brown,* 574 A.2d 745, 749 (R.I.1990). After a retrial, however, the Superior Court convicted applicant again on all eight counts. This time, the Court affirmed the convictions on appeal in *State v. Brown,* 619 A.2d 828, 833 (R.I. 1993).

More than four years later, on September 26, 1997, applicant's counsel filed a ninety-three count application for post-conviction relief on his behalf. Before the court heard the application, however, she withdrew from representing applicant. The court then appointed another attorney, who entered his appearance on May 29, 1998. On May 19, 1999, that attorney filed a forty-page memorandum in which he concluded that there was no basis for granting the relief requested by his client, and he recommended that Brown's application for post-conviction relief be denied and dismissed with prejudice.

At a hearing held in May 1999, the attorney first reviewed with the hearing justice his reasons for suggesting that post-conviction relief was unwarranted. He specifically mentioned his belief that applicant's trial counsel was "competent and very well prepared" and that applicant "had a full and fair trial." Furthermore, he asserted that there was "no newly-discovered evidence that I'm aware of." The hearing justice then permitted Brown to speak. She granted Brown's motion to dismiss his attorney but denied his motion to strike the attorney's no-merit memorandum. At the conclusion of the hearing, she denied the application for post-conviction relief. Brown, acting *pro se,* filed a notice of appeal, which he did not pursue, and a motion for reconsideration.

At the hearing on Brown's motion for reconsideration, the court gave him a full opportunity to argue for the granting of

---

1. Specifically, the indictment alleged in counts 1 through 3 that between July 1, 1979 and May 3, 1984, Brown engaged in sexual penetration with a person thirteen years old or under in violation of G.L. 1956 §§ 11–37–2, as amended by P.L. 1981, ch. 119, § 1 and § 11–37–3. Counts 4 through 6 alleged that between May 4, 1984 and April 12, 1985, he engaged in sexual penetration with a person under thirteen-years old in violation of §§ 11–37–8.1 and 11–37–8.2, as amended by P.L. 1984, ch. 59, § 2. Finally, counts 7 through 9 alleged that between April 13, 1985 and May 18, 1988, Brown engaged in sexual penetration by force and coercion in violation of §§ 11–37–2 and 11–37–3. The court later dismissed one of the counts alleging force and coercion.

post-conviction relief. He took issue with his attorney's failure to pursue claims that his first attorney originally asserted, and he then recited, in some detail, all the specific alleged errors and deficiencies that, in his opinion, constituted grounds for relief.

At the conclusion of the hearing on the motion for reconsideration, the hearing justice—who also had presided as the trial justice—accepted for purposes of the application that the applicant would be able to establish his factual assertions. She concluded, however, that most of what he complained about amounted to challenging the strategic decisions and tactics of his trial attorney. She stated that Brown's trial attorney "struck a balance and what he did seems within the scope of the kind of trial strategy choices that any defense attorney would make." She continued: "I cannot say that his trial strategy was clearly wrong, was misguided or was mistaken. You're entitled to a good defense and a fair defense, but not a perfect defense. And the mere fact that the defense doesn't work doesn't necessarily mean he's ineffective." Consequently, the hearing justice denied the motion for reconsideration.

The applicant then filed numerous other motions in Superior Court, including, for example, a motion for appointment of new counsel and a motion to vacate a decision denying bail. He also filed an *in forma pauperis* motion to have the transcripts of the hearing provided to him. The court granted that latter motion.

In a separate but related development, on September 23, 1999, he filed a petition for writ of mandamus and for a writ of habeas corpus with this Court, which we denied in an order dated February 11, 2000. In that same order, this Court appointed yet another attorney "to represent [applicant] in the further prosecution of his appeal from the denial of his application for post-conviction relief." He took no appeal, however, from the denial of his application for post-conviction relief at that time. In fact, Brown never appealed to this Court from the judgment denying his application for post-conviction relief. Also, he failed to transmit the record of the post-conviction relief proceedings to this Court in accordance with Article I, Rule 11 of the Supreme Court Rules of Appellate Procedure.

On October 20, 2000, we entered an order granting the applicant's motion for appointment of yet another new counsel and we named another attorney to replace his previous counsel "to represent the [applicant] in the further prosecution of his appeal." All of these motions and orders continued to be filed under the docket number for the case involving mandamus and habeas corpus. On August 23, 2001, Brown's new attorney filed a "Petition to Overturn Conviction or to Remand to Superior Court." The state objected, arguing *inter alia*, that the matter was not properly before this Court because Brown had "filed a miscellaneous petition through his second appointed attorney, under a Supreme Court file number reportedly no longer extant, asking this Court either to 'overturn' his conviction for first-degree sexual assault or to remand his post-conviction case for further proceedings."

This Court, at a session in conference, considered and denied applicant's "Petition to Overturn Conviction or to Remand." We noted that the issues raised in the petition could have been raised on direct appeal from the denial of his post-conviction relief application. Because applicant failed to perfect his appeal, however, and because the rules of procedure do not provide for review based on a "petition to overturn a conviction," we concluded that we could not consider the issues Brown

had attempted to raise. As a result, the Court denied the petition, but it did so without prejudice to the filing by Brown of a petition for a writ of certiorari.

The applicant then filed this petition for a writ of certiorari on July 1, 2002. On July 11, 2002, we appointed yet another attorney to represent him. On December 12, 2002, we granted the petition and issued the writ. We also ordered the case to proceed in accordance with Article I, Rule 12A of the Supreme Court Rules of Appellate Procedure and assigned it to the show-cause calendar.

The applicant argues that: (1) his conviction should be overturned; (2) his application for post-conviction relief should not have been denied; and (3) he was deprived of his Sixth Amendment right to effective assistance of counsel at trial.

With respect to the first issue, the applicant contends that the former three-year statute of limitations for child molestation expired before he was indicted with respect to the acts alleged in counts 1 through 6. He argues that the statutory amendment to G.L. 1956 § 12–12–17 (P.L. 1985, ch. 195, § 1), which eliminated the three-year statute of limitations for such cases, became effective on June 25, 1985, and cannot be applied retroactively to the offenses with which he was charged. Moreover, he asserts that counts 7 and 8 of the indictment contained allegations that occurred partially within the statute of limitations and partially outside the statute of limitations. Contending that it is impossible to determine whether the jury convicted him on those counts for conduct that occurred before or after the statute of limitations had expired, he maintains that his conviction should be overturned. He also insists that "the prosecution of him for offenses that occurred outside the scope of the applicable statute of limitations, was an *ex post facto*

prosecution, and illegal," and argues that the trial justice improperly instructed the jury.

With respect to the second issue, Brown argues that the hearing justice should not have denied his application for post-conviction relief based on a no-merit memorandum filed by his court-appointed attorney. He argues that the trial justice failed to follow the procedure outlined by this court in *Shatney v. State,* 755 A.2d 130 (R.I. 2000) (per curiam). Had the hearing justice followed those procedures and reached the merits of Brown's claim, he insists, the hearing justice probably would have granted his application for post-conviction relief. He also posits that the hearing justice would have granted post-conviction relief based on the ineffectiveness of his counsel and the alleged prosecutorial misconduct.

Finally, concerning the third issue, the applicant suggests that he was deprived of his Sixth Amendment right to counsel. He initially argues that his trial counsel was ineffective because he failed to raise the statute of limitations defense and failed to move to dismiss the indictment on that ground. In addition, his counsel failed to raise any *ex-post-facto* argument as a defense. Finally, he also avers that his trial counsel failed to cross-examine the complaining witness effectively and failed to request proper jury instructions.

After reviewing the parties' written and oral submissions, we are of the opinion that cause has not been shown why we should not decide this case summarily. Thus, we proceed to do so at this time.

Unfortunately, Brown appears to misunderstand the nature and posture of this proceeding, as he apparently did in filing his "petition to overturn his conviction." His first claim asks us to overturn his conviction and release him from jail, or grant him a new trial because the sexual

assaults and molestation crimes that led to his convictions allegedly occurred outside the applicable statute of limitations. But our review is limited to the order denying his application for post-conviction relief. Therefore, we can consider only the issues that applicant duly raised in his post-conviction relief proceeding.

■■■ The applicant failed to raise a timely statute-of-limitations argument in any of his post-conviction relief submissions or contentions to the Superior Court. We limit our review on certiorari to examining the record to determine if there are any errors of law. *Ryan v. Roman Catholic Bishop of Providence*, 787 A.2d 1191, 1193 (R.I.2002). And we inspect the record to discern if there is any legally competent evidence to support the findings of the hearing justice below. *Id.* But we will not reach beyond the record to consider issues not raised with the hearing justice in the first instance. *Cruz v. Town of North Providence*, 833 A.2d 1237, 1241 n. 1 (R.I.2003). By all appearances, Brown raised this issue for the first time before this Court in a document filed in the previous proceeding, on February 8, 2000, entitled "Supplemental Memorandum in Support of Writ of Mandamus and Writ of Habeas Corpus." Thus, this claim is outside the scope of his post-conviction-relief application. *See* G.L.1956 § 10–9.1–8 (all grounds for post-conviction relief not raised in original, supplemental, or amended application may not be the basis for a subsequent application). For that reason, the hearing justice never considered it. Therefore, we cannot now consider this claim on certiorari.

■■■ Moreover, even if Brown had raised the statute-of-limitations issue before the hearing justice in his application for post-conviction relief, it still would have been too late. This Court clearly and emphatically has held that "the statute of limitations is an affirmative defense that must be raised at or before trial *or it is waived.*" *State v. Lambrechts*, 585 A.2d 645, 646 (R.I.1991). (Emphasis added.) In fact, Brown acknowledged that the failure to raise, at or before trial, a statute-of-limitations defense results in a waiver of that defense. In short, this applicant long ago waived any statute-of-limitations defenses and arguments, and he has provided us with no basis for this Court to disturb his conviction on that ground. Moreover, as a practical matter, even if applicant's statute-of-limitations argument were tenable—and we do not believe that it ever possessed any merit—it would not affect the sentences that he received. This is so because the argument applies only to the child-molestation crimes for which he received concurrent sentences to his convictions for first-degree sexual assault. With respect to his sexual-assault convictions, no statute-of-limitations defense was possible because no statute of limitations existed for such crimes.

Thus, even if Brown had raised this defense at trial, he would not have succeeded on the merits of his statute-of-limitations defense. As the state correctly notes, the General Assembly did not designate "child molestation" as a separate and distinct crime until 1984 with the passage of § 11–37–8.1. Therefore, counts 1 through 3, which covered the period from July 1, 1979, to May 3, 1984, charged Brown not with child molestation but with first-degree sexual assault in violation of § 11–37–2. There has never been a statute of limitations for first-degree sexual assault. Section 12–12–17. In addition, the last two counts also charged Brown with first-degree sexual assault because the victim was no longer considered a child when the pertinent criminal acts occurred. Although counts 4 through 6 charged Brown with child molestation for criminal

acts occurring between May 4, 1984, to April 12, 1985, § 12–12–17 was amended in 1985 to include the newly enacted child-molestation statute as one of the crimes not subject to the statute of limitations. Therefore, even if Brown timely asserted his statute-of-limitations defense, he would not have succeeded on the merits.

■ It also appears that Brown waived his *ex-post-facto* argument. Like his statute-of-limitations claim, Brown neither presented his *ex-post-facto* claim to the hearing justice, nor did he raise it before the lower court when applying for post-conviction relief. As a result, these arguments are deemed waived. *See State v. Silvia*, 798 A.2d 419, 427 (R.I.2002) (" 'It is axiomatic that "this [C]ourt will not consider an issue raised for the first time on appeal that was not properly presented before the trial court." ' "). In addition, Brown's claim does not fit into the narrow exception to the raise-or-waive rule, available when basic constitutional rights are at stake, because the claim does not implicate an issue of constitutional dimension derived from a novel rule of law that could not have been known at trial. *See id.*

■ Likewise, Brown also waived his inadequate-jury-instructions argument because he failed to timely raise it below. By all appearances, the applicant did not raise this issue until his motion for reconsideration of the order denying post-conviction relief. Accordingly, we will not entertain his defective-jury-instructions argument because he failed to raise it at trial or on his direct appeal. *See State v. Clark*, 754 A.2d 73, 77 (R.I.2000).

■ Like applicant's statute-of-limitations argument, this claim also would have failed on the merits had he timely asserted it. The applicant argues that under *State v. Griffith*, 660 A.2d 704 (R.I.1995), which was decided two years after his conviction,

he was entitled to a *mens rea* instruction stating that the purpose of applicant's sexual penetration of the victim was for his sexual arousal or gratification and did not result from innocent or inadvertent touching. Our subsequent case law, however, limits *Griffith*, making clear that no *mens rea* instruction is necessary in crimes involving penile penetration because that type of contact precludes innocent or accidental touching. *See State v. Yanez*, 716 A.2d 759, 767 (R.I.1998); *State v. Bryant*, 670 A.2d 776, 783 (R.I.1996). Moreover, Brown's acts occurred over the course of seven years; therefore, they could not constitute the type of innocent or inadvertent touching that prompted the *Griffith* Court's decision. *See State v. Aponte*, 800 A.2d 420, 429 (R.I.2002) ("sustained assault, during which defendant repeatedly manipulated his hand into baby's vagina, is a digital penetration that cannot be confused with accidental or innocent touching").

[9] The applicant's second assertion that the hearing justice denied him the procedural protections that we outlined in *Shatney* also has scant merit. In *Shatney*, 755 A.2d at 135, we adopted a procedure by which a court-appointed counsel may seek to withdraw during post-conviction relief proceedings after concluding that there is no merit to the applicant's request. In such circumstances, this Court stated:

> "[A]ppointed counsel must file with the court and serve upon the applicant a motion to withdraw accompanied by a 'no-merit' memorandum that details the nature and extent of his or her review of the case, lists each issue the applicant wished to raise, and explains why in counsel's professional opinion those issues and any others that he or she may have investigated lacked merit. The court then must conduct a hearing with the applicant present. If, based upon its

review of counsel's assessment of the potential grounds for seeking post-conviction relief and of any other issues that the applicant wishes to raise, the court agrees that those grounds appear to lack any arguable merit, then it shall permit counsel to withdraw and advise the applicant that he or she shall be required to proceed *pro se*, if he or she chooses to pursue the application." *Shatney*, 755 A.2d at 135.

The applicant's court-appointed counsel complied with the *Shatney* procedures by filing a forty-page no-merit memorandum and discussing with the hearing justice the reasons he believed post-conviction relief was not warranted.

■ The trial justice also essentially followed this procedure because after hearing from Brown's attorney, she afforded him an opportunity to speak on his own behalf and to dispute the points made in his counsel's no-merit memorandum. In addition, the court granted him a second hearing on his motion for reconsideration during which he was able to fully argue again for post-conviction relief. In any event, the *Shatney* procedure applied only prospectively to proceedings after we decided that case, but not to cases such as this one that were heard before we decided *Shatney*. See *Carpenter v. State*, 796 A.2d 1071, 1072 (R.I.2002) (per curiam) ("the *Shatney* holding was prospective; it does not apply to cases such as this one in which the PCR hearing occurred before we issued our opinion in *Shatney*"). For these reasons, we hold, he has received all the process that was due to him.

■ Finally, with respect to Brown's allegations of ineffective assistance of counsel, the state correctly points out that any issues not raised before the hearing justice during the post-conviction relief proceeding have been waived. To the extent that he properly raised any of these claims, thereby preserving them for our review, the applicant still bears the burden of convincing this Court that the findings of the hearing justice were clearly wrong or that she overlooked or misconceived material evidence. See *Vorgvongsa v. State*, 785 A.2d 542, 546 (R.I.2001) (per curiam). The benchmark test in reviewing a claim for ineffective assistance of counsel is "whether counsel's conduct so undermined the proper function of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 548 (quoting *Toole v. State*, 748 A.2d 806, 809 (R.I.2000) (per curiam)).

■ It appears to us that much of the criminal case against Brown turned on credibility, both his and that of the complaining witness. The hearing justice determined that, far from being ineffective, defense counsel effectively took advantage of the credibility issues in this case. The court observed that, in essence, applicant's trial attorney had "pitted your [applicant's] word against hers [victim's] which very often is a very * * * effective trial strategy." The court elaborated:

> "[V]ery often defense attorneys will avoid a lot of cross-examination on the details of dates, times and incidents because what they don't want to do, first of all, is give the witness the opportunity to tell the story again and again to the jury. And if you have a particularly sympathetic appearing witness such as Ms. Brown was, she was very young looking, very frail looking, very soft spoken, a lot of times attorneys don't want to cross-examine too heavily because they're afraid they're going to create a bias in the minds of the jury against the party that attorney is representing. These are very legitimate trial strategies. My recollection is his strategy was to lay off her, not give her an opportunity to keep rehashing the sub-

stance of the allegations just because he's picking on time, month, date, whatever."

According to the hearing justice, who also presided as the trial justice, the very trial techniques that Brown now complains of were, in fact, an effective trial strategy.

Moreover, the hearing justice made adequate findings of fact, and nothing in the record indicates that she overlooked or misconceived material evidence. Although this Court must review *de novo* the ultimate question of whether a defendant's constitutional rights were infringed, we still must give deference to the hearing justice's factual findings. *Id.* at 546–47. In short, Brown failed to establish that his trial counsel's performance was constitutionally defective.

In conclusion, to the extent that any of the applicant's arguments suggest that the evidence did not support his conviction, we hold that such claims cannot be litigated for the first time at a post-conviction relief hearing. The applicant first had to address such arguments to the jury during the trial and then to the trial justice on a motion for a new trial. Even then, this Court only may consider these claims on direct appeal. *See Vorgvongsa,* 785 A.2d at 547–48.

Therefore, we discern no merit to the applicant's arguments that we should overturn his conviction because the statute of limitations ran, that the procedures followed in the post-conviction-relief proceeding were flawed, and that he was denied his Sixth Amendment right to effective assistance of counsel at trial. Accordingly, we affirm the judgment denying his application for post-conviction relief and remand the papers in this case to the Superior Court with our decision endorsed thereon.