**UNITED STATES of America,**
**Plaintiff,**

v.

**Cecil W. CHANDLER III, Defendant.**

**Nos. 98–40044–01, 00–3382–RDR.**

United States District Court,
D. Kansas.

Sept. 16, 2003.

Norman Wesley Quarles, Pro se, Forrest City, AR, James G. Chappas, Jr., Ronald E. Wurtz, Office of Federal Public Defender, Topeka, KS, for Defendant.

Thomas G. Luedke, Office of United States Attorney, Topeka, KS, for Plaintiff.

## MEMORANDUM AND ORDER

ROGERS, District Judge.

This matter is presently before the court upon the defendant's pro se motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255. Having carefully reviewed the arguments contained in the defendant's motion, the court is now prepared to rule.

The defendant was convicted following a jury trial of two counts of conspiracy to distribute in excess of 50 grams of cocaine base in violation of 21 U.S.C. § 846 and 18 U.S.C. § 2. The defendant was sentenced to concurrent terms of 360 months imprisonment on each count. His convictions and sentence were affirmed on appeal. *United States v. Chandler,* 5 Fed.Appx. 839, 2001 WL 201977 (10th Cir.), cert.

denied, 534 U.S. 852, 122 S.Ct. 120, 151 L.Ed.2d 76 (2001). The defendant was convicted of involvement in two conspiracies: (1) one with David Seabury from approximately January 1, 1997 to September 30, 1997 to distribute crack cocaine (the "Seabury conspiracy"); and (2) one with Ronnie Jones from approximately November 1, 1996 to May 31, 1997 to distribute crack cocaine (the "Jones conspiracy"). The facts underlying these convictions were set forth in the Tenth Circuit's opinion in this case as follows:

A. The Seabury Conspiracy

Defendant sold crack for a living. Seabury and Defendant began buying crack together in 1997. Their first joint purchase occurred in January, 1997. Defendant arranged to meet the seller, a person unknown to Seabury, in a grocery story parking lot in Topeka, Kansas. Seabury and Defendant then drove to Topeka, Kansas, where Defendant paged the seller. When the seller approached their car, Seabury gave Defendant $500 which Defendant put together with his own $500 and handed to the seller in exchange for one ounce of crack. After purchasing crack in Topeka, Defendant and Seabury divided it equally and then sold it separately. Defendant had others sell his crack for him. Specifically, Seabury saw Jermaine Archibald, a/k/a Bastard, sell drugs for Defendant.

Defendant and Seabury made two additional joint purchases from the Topeka seller in the same manner. The second joint purchase of crack occurred in May 1997, and differed from the first only in that two ounces were purchased for $2000. The third and final joint purchase made by Seabury and Defendant took place in July 1997. That time, four ounces of crack were purchased for $4000. Seabury and Defendant had Seabury's mother rent cars

for them, generally for one month at a time, which they used to drive to Topeka to buy crack and for other purposes. Defendant and Seabury each paid half of the rental charge and they shared the use of the rental cars equally.

During the period of time in which Defendant and Seabury were buying crack in Topeka, they spent a significant amount of time together and even jointly rented a home in Ogden, Kansas. At trial, the government introduced a photograph of Defendant and Seabury in which Defendant is displaying a large amount of cash for the camera. Seabury confirmed that the money Defendant is holding in that photograph came from selling crack.

### B. The Jones Conspiracy

In November 1996 Defendant approached Ronnie Jones about buying drugs. Jones bought two ounces of crack from Defendant that month, and one ounce a month thereafter until May 1997. In these purchases Jones acted as a middleman, purchasing the crack from Defendant for a person named "Beedy-bump." Beedy-bump gave Jones the money he used to make the purchases and paid him approximately $200 for completing each transaction.

### C. Other Evidence of the Charged Conspiracies

Jurlene Lucas a/k/a Jurlene Jackson, the mother of one of Defendant's girlfriends, heard Defendant discuss his sale of drugs numerous times during the nine years that she has known him. In 1997, Defendant told Lucas that he was buying his crack cocaine in Topeka and also bragged that he had fifteen people working for him in his drug operation. Lucas identified Keisha Green, Tamika Moore, a woman named "Lum," and Archibald as some of the people that worked in Defendant's drug ring. She often saw Defendant with Seabury, and heard both Seabury and Archibald brag about selling drugs.

Sometime during the summer of 1997, Defendant asked Lucas to keep $4000 for him. In September of 1997, after he had retrieved the original $4000, Defendant asked Lucas to hold an additional $8,500 for him. Later, he asked her to hold another $3000. Police eventually seized $10,960 of that money and found that most of it was in $20 bills.

At the time of the alleged conspiracies, crack was commonly sold in one-hit $20 pieces. Those one-hit pieces of crack are commonly packaged by dropping them in the corner of a sandwich baggie, tying a knot, and cutting the corner off above the knot. Brandon Grubs, a police officer, found small empty plastic bags and $230 in cash in Defendant's shoes when he searched Defendant following his arrest in December of 1996. When Grubs asked him what the baggies were for, Defendant replied that sometimes his stuff is not packaged and he has to do it himself.

In June 1998, police executed a search warrant at the home of Natasha Moore, Seabury's sister and another girlfriend of Defendant. Over $3000 worth of rental car agreements in Seabury's mother's name, from the first six months of 1997, were found. One of the agreements listed Defendant as a driver and Defendant had been stopped by police in the rental car covered by that particular agreement. Several letters from Defendant to Moore were also recovered. One of the letters contained a photograph of Defendant taken while he was incarcerated. The photograph shows Defendant in the center surrounded by approximately six other men. The handwritten caption on the photo reads: "I keep a Firm no matter where I'm at, baby." Ron Espy, a police officer, stated that the handwritten caption appeared to match the handwriting of the

other letters from Defendant to Moore which were recovered during the search. Seabury, Lucas and Espy all testified that Defendant referred to his drug distribution organization as "The Firm."

In March or April of 1997, Defendant and Jones were both confined at the federal pretrial detention facility in Leavenworth, Kansas. Jones and Defendant had a conversation there in which Defendant told Jones that Archibald was running his drug business while he was incarcerated. After Jones had stopped purchasing crack from Defendant, Jones saw Defendant packaging crack in August 1997 at his Ogden, Kansas home.

Jones and Seabury both claimed to be very familiar with the appearance of crack, Seabury claiming to have seen it over 500 times and Jones, over 100 times. Both Seabury and Jones testified that the substance purchased from and with Defendant was crack. Finally, in June 1997, during the period of the alleged Seabury Conspiracy, Defendant was arrested for possession of crack. Defendant pled to possession of crack and a journal entry of his conviction was entered into evidence.

Seabury, Lucas and Jones all entered into agreements to testify with the federal prosecutor hoping to avoid indictment or to obtain lenient sentences.

*Chandler*, 5 Fed.Appx. at 843–45 (citations and footnotes omitted).

In the instant motion, the defendant raises the following grounds for relief: (1) his counsel was ineffective both prior to trial and during trial; (2) the instructions given by the court effectively amended the indictment; (3) the issue of the drug quantity was not submitted to the jury; (4) the government failed to notify him that it had filed an enhancement information under 21 U.S.C. § 851; (5) the government engaged in misconduct by relying upon a misleading witness to indict; (6) there was insufficient evidence to convict him; (7) the court

erred in denying a James hearing prior to trial; and (8) the court lacked subject matter jurisdiction over the charges against him.

■ In order to obtain relief under § 2255 on the basis of constitutional error, the petitioner must establish an error of constitutional magnitude which had a substantial and injurious effect or influence on the verdict. *Brecht v. Abrahamson,* 507 U.S. 619, 637–38, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993). In order to obtain relief on the basis of nonconstitutional error, the petitioner must show a fundamental defect in the proceedings resulting in a complete miscarriage of justice or an error so egregious that it amounted to a violation of due process. *Reed v. Farley,* 512 U.S. 339, 353–354, 114 S.Ct. 2291, 129 L.Ed.2d 277 (1994).

■ An evidentiary hearing must be held on a § 2255 motion "unless the motion and files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255; *United States v. Galloway,* 56 F.3d 1239, 1240 n. 1 (10th Cir.1995). To be entitled to an evidentiary hearing, the defendant must allege facts which, if proven, would entitle him to relief. *See Hatch v. Oklahoma,* 58 F.3d 1447, 1471 (10th Cir.1995), cert. denied, 517 U.S. 1235, 116 S.Ct. 1881, 135 L.Ed.2d 176 (1996). "[T]he allegations must be specific and particularized, not general or conclusory." *Id.* The court finds that a hearing on the defendant's motion is not necessary for two reasons. First, the court finds that the materials already in the record conclusively show that the defendant is not entitled to relief on most of his claims. Second, the court finds that the defendant has not provided a sufficient factual basis to require a hearing on the remaining claims.

■■ A proceeding under § 2255 may not be used to challenge the legality of matters which should have been raised on direct appeal. *United States v. Frady,* 456 U.S. 152, 165, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982); *United States v. Allen,* 16 F.3d 377, 378 (10th Cir.1994). To overcome this procedural bar, the defendant must show cause for his failure to present the claim on direct appeal and prejudice resulting therefrom, or that a fundamental defect occurred which inherently resulted in a complete miscarriage of justice. *Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Allen,* 16 F.3d at 378.

■ An ineffective assistance of counsel claim can serve as "cause" to excuse procedural default of other underlying or "stand alone" claims, but only if the defendant can meet the "cause or prejudice" standard required for establishing ineffective assistance of counsel. *See Edwards v. Carpenter,* 529 U.S. 446, 120 S.Ct. 1587, 1591, 146 L.Ed.2d 518 (2000); *United States v. Cook,* 45 F.3d 388, 392 (10th Cir.1995).

The court is not persuaded that the defendant has demonstrated cause and prejudice for any of his claims including his ineffective assistance of counsel claims. Nevertheless, in an effort to construe plaintiff's claims liberally, particularly his ineffective assistance of counsel claims, the court shall proceed to the merits of these claims.

The defendant contends that his counsel was ineffective in the following ways: (1) failing to file a motion to suppress certain photographs; (2) failing to file a motion to suppress the testimony given by Detective Espy before the grand jury; (3) failing to interview government and defense witnesses prior to trial; (4) misinforming the defendant about the possible use of his prior convictions; (5) failing to seek en banc review in the Tenth Circuit Court of Appeals; (6) failing to negotiate a plea agreement on his behalf; (7) failing to present to him a plea offer made by the government; and (8) failing to object to certain jury instructions.

"The benchmark for judging any claim of ineffectiveness must be whether the counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To obtain relief on an ineffective assistance of counsel claim, a defendant must satisfy a two-pronged test. First, he "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688, 104 S.Ct. 2052. Second, he must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. 2052. To meet the first prong, a defendant must show that defense counsel's performance was neither reasonable under prevailing professional norms nor sound trial strategy. To meet the second prong, petitioner must show a reasonable probability that, but for the deficiencies in counsel's conduct, the result of the case would have been different. A probability is reasonable if it is sufficient to undermine confidence in the outcome. *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052. The court "may address the performance and prejudice components in any order, but need not address both if [the defendant] fails to make a sufficient showing of one." *Cooks v. Ward,* 165 F.3d 1283, 1292–93 (10th Cir.1998), cert. denied, 528 U.S. 834, 120 S.Ct. 94, 145 L.Ed.2d 80 (1999); *see also Davis v. Executive Director of Dept. Of Corrections,* 100 F.3d 750, 760 (10th Cir. 1996) (noting that court can proceed directly to prejudice without addressing performance), cert. denied, 520 U.S. 1215, 117 S.Ct. 1703, 137 L.Ed.2d 828 (1997).

There is a strong presumption that counsel provided effective assistance of counsel, and the defendant has the burden of proof to overcome that presumption. *United States v. Cronic*, 466 U.S. 648, 658, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). "Judicial scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052. The reasonableness of the counsel's performance must be evaluated at the time of the alleged error. *Kimmelman v. Morrison*, 477 U.S. 365, 381, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986). "For counsel's [decision] to rise to the level of constitutional ineffectiveness, the decision ... must have been 'completely unreasonable, not merely wrong, so that it bears no relationship to a possible defense strategy.'" *Hatch*, 58 F.3d at 1459 (quoting *United States v. Ortiz Oliveras*, 717 F.2d 1, 4 (1st Cir. 1983)). Neither hindsight nor success is the measure of the reasonableness of counsel's challenged conduct. *Hoxsie v. Kerby*, 108 F.3d 1239, 1246 (10th Cir.), cert. denied, 522 U.S. 844, 118 S.Ct. 126, 139 L.Ed.2d 77 (1997).

At the outset, the court notes that I have an excellent recollection of this case even though it occurred several years ago. Nevertheless, I have reviewed the transcript of the trial before addressing the issues raised by the defendant. The transcript confirms the impression the court had during the pretrial proceedings and the trial. The court found the defendant ably represented by counsel. Defense counsel was an experienced attorney who has tried a number of cases in this court and in other courts. During the course of this case, he was well-prepared and did an effective job in a difficult case. He was confronted with evidence that was formidable. The evidence concerning the defendant's participation in the activities charged in the indictment was very strong. Nevertheless, defense counsel skillfully explored the evidence and made every effort to lessen its harm to the defendant. He displayed a thorough knowledge of the factual background and showed that he had actively investigated the matter. He made appropriate objections and arguments. In sum, he zealously represented his client. With that said, we turn to the allegations of ineffective assistance of counsel contained in the motion.

The defendant initially contends that his counsel was ineffective because he failed to file a motion to suppress certain photographs that were introduced at trial. He contends that these photographs had been suppressed in an earlier case brought against him in this court.

On January 7, 1998, the defendant was charged in this court with possession with intent to distribute crack cocaine in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 and conspiracy to possess with intent to distribute crack cocaine in violation of 21 U.S.C. § 846 and 18 U.S.C. § 2. The defendant moved to suppress certain evidence that was seized from two residences in Junction City, Kansas. The magistrate heard evidence on the motion and recommended that it be granted. Judge Van Bebber adopted the magistrate's recommendation and granted the motion. On September 8, 1998, the government sought to dismiss the indictment. This motion was granted on September 15, 1998. The indictment in this case was filed on May 27, 1999.

The government asserts in response to the instant motion that photographs used in this case were not the same photographs that were suppressed in the earlier case. The government states: "All of the evidence used in the defendant's trial either came from unrelated search warrants or from the witnesses themselves."

■ The court does not find this argument provides any basis for relief for two reasons. First, the defendant has not suf-

ficiently demonstrated that the photographs that were used at trial were suppressed in the earlier proceeding. The defendant has only made vague allegations about these photographs. He has not specifically identified the photographs used in this trial or the photographs that were suppressed earlier. Without such specificity, the court is unable to determine if the photographs were indeed suppressed in the earlier proceedings. Moreover, the defendant has failed to suggest how or why the outcome of his trial would have been different. The defendant has only suggested that these photographs "if not presented would have changed the outcome of the trial." Given the wealth of evidence in this case, we do not believe that the defendant has sufficiently shown that the verdict would have been different.

The defendant next argues that his counsel should have sought to suppress the grand jury testimony of Detective Joseph Espy. He argues that his counsel should have done so because the magistrate in the earlier case found that Detective Espy made misleading statements to a state court judge in a search warrant affidavit. He suggests that the suppression of Detective Espy's testimony before the grand jury would have led to the dismissal of the indictment in this case.

The government notes in response that the grand jury in this case heard from other witnesses in addition to Detective Espy. The government suggests that these witnesses provided an independent basis upon which to indict the defendant. The government challenges the remarks made by the magistrate and asserts that there was no evidence that established that Detective Espy supplied false information in an affidavit.

■ The court finds numerous problems with this allegation, but we shall mention only a few. The defendant has failed to establish that a motion to suppress addressing this issue would have been successful. Even if Detective Espy did previously provide false information, there is no indication that the information provided to the grand jury here was false. The defendant has not demonstrated that Detective Espy offered any false testimony to the grand jury. The defendant has only suggested that "[i]f Det. Espy misled the court once, he will continue to do so because of his desire to see the movant convicted." There is no basis for the defendant's argument. In addition, the defendant has failed to show that the suppression of Detective Espy's testimony would have led to the dismissal of the indictment. As correctly pointed out by the government, the grand jury heard the testimony of several witnesses in addition to Detective Espy.

The defendant next asserts that his attorney failed to interview or locate potential witnesses. The only specific witness noted by the defendant in his motion that his counsel failed to interview or locate is Lakeasha Green. He indicates that Ms. Green wrote a letter to his counsel and indicated that she had information that would help him.

■ The government points out that Ms. Green was on its witness list. The government notes that she had previously provided beneficial information to the government concerning the defendant. The government further notes that the defendant's attorney did attempt to contact Ms. Green, as evidenced by a letter attached to its response.

The court again finds that this issue provides no basis for relief. The court notes that the defendant has failed to indicate the nature of Ms. Green's testimony. The suggestion that it would have been helpful, without any showing of that potential testimony, is insufficient.

The defendant next suggests that he was coerced not to testify by his counsel because he was told by his counsel that his prior convictions would be used against him and this would be harmful to his case. The court finds no support for the contention that he was coerced into silence. At the close of the defendant's case, the court had the following colloquy with the defendant:

THE COURT: All right, we're here to talk about instructions, but before we do that, Mr. Chandler, let me ask you a question or two here. My question is, do you understand that you have a constitutional right to testify in your own case?

MR. CHANDLER: Yes, sir.

THE COURT: And you further understand that the decision to testify is not solely—is solely yours and not that of your attorney?

MR. CHANDLER: Yes, sir.

THE COURT: You understand that? And you may consult with him and he may provide you with his opinion, but, ultimately, the decision is yours to make, you understand that?

MR. CHANDLER: Yes, sir.

THE COURT: Thank you.

The defendant acknowledged to the court that the decision not to testify was his own. He indicated that he understood that his counsel could provide advice, but that the decision was his alone to make. The court believes that the advice offered by his counsel, if the defendant's representation is true, was entirely appropriate. Any criminal defense attorney understands that testimony by a defendant may make prior convictions fair game. The court is not persuaded that defense counsel engaged in any improper conduct. Moreover, the defendant has failed to show that he was prevented from testifying since he acknowledged as much in open court. Finally, the defendant has not shown that his testimony would have changed the outcome of the trial. He has not proffered the nature of his testimony or how it would have changed the verdict.

The defendant next contends his attorney failed to negotiate a plea agreement on his behalf. He further asserts that his attorney failed to inform him of a plea offer made by the government.

The government points out that defense counsel did convey a plea offer to the defendant, as evidenced by a letter to the defendant on December 21, 1999. In the letter, defense counsel urged the defendant to accept the plea. The government also suggests that "it is difficult to see how the defendant would have entertained a guilty plea when he has taken pains to proclaim his innocence."

This is another issue lacking factual or legal support. The record demonstrates that the defendant was advised by his counsel of the offer made by the government. The letter written by defense counsel to the defendant indicates that counsel did negotiate with the government and did convey the offer to the defendant. In sum, the court finds no merit to this contention.

The defendant next asserts that his counsel was ineffective for failing to seek en banc review of the decision on appeal by the Tenth Circuit. Such a claim does not present an appropriate basis for relief under 28 U.S.C. § 2255. *McNeal v. United States*, 54 F.3d 776, 1995 WL 290233 (6th Cir.1995) (table case) (since there is no constitutional right to counsel in seeking rehearing en banc, then defendant's constitutional rights cannot be violated by allegedly defective performance of his attorney).

The defendant next argues that his counsel was ineffective in not challenging certain instructions given by the court.

The defendant asserts that the court constructively amended the indictment by giving an instruction on conspiracy that amounted to "attempted" conspiracy. The defendant believes that the jury was "misled" by this instruction.

■ This claim arises from the court's instruction to the jury on the definition of conspiracy. In the instruction submitted to the jury, the court stated, inter alia, that in order for the defendant to be found guilty of conspiracy, the jury must find unanimously beyond a reasonable doubt that "two or more persons in some way or manner, positively or tacitly came to a mutual understanding to try to possess cocaine base with the intent to distribute in the District of Kansas, and that defendant willfully became a member of that conspiracy." The defendant suggests that the use of the phrase "try to possess cocaine base with the intent to distribute" constructively amended the indictment to charge him with attempted conspiracy, rather than conspiracy.

■ The defendant's argument lacks a fundamental understanding of the law concerning conspiracy. "The essence of the crime of conspiracy is an agreement to commit an unlawful act." *United States v. Peveto*, 881 F.2d 844, 855 (10th Cir.) (quotation marks and citation omitted), cert. denied, 493 U.S. 943, 110 S.Ct. 348, 107 L.Ed.2d 336 (1989). In order to be found guilty of conspiracy, the defendant need not succeed in achieving the object of the conspiracy. The language used by the court in the portion of the instruction noted by the defendant as well as the other instructions on conspiracy conveyed this rule to the jury. Thus, the language used by the court accurately defined conspiracy and did not constructively amend the indictment as suggested by the defendant. Accordingly, the failure of defense counsel to object to this instruction did not constitute ineffective assistance of counsel.

■ The defendant next contends that his counsel was ineffective for failing to notify him that the government had filed an information for enhancement of his sentence pursuant to 21 U.S.C. § 851 prior to trial. He suggests that he would have considered a guilty plea if he had been aware of the filing of the enhancement. Once again, the court finds no factual or legal support for this contention.

On December 21, 1999, defense counsel sent the defendant a letter that contained the following:

As you know, I visited with you on December 17, 1999, and showed you the letter I received from the United States Attorney indicating that the cutoff date for negotiating a plea in this matter was December 17, 1999. Over the course of the last couple of months I have raised the issue of plea with you, but you have consistently indicated that you wanted trial. In addition to our discussion on December 17, 1999, on several occasions prior to December 17, 1999, I indicated to you that the United States Attorney was willing to negotiate a plea that would amount to somewhere in the area of ten years in your case. I have indicated to you on numerous occasions that ten years would be a very good deal for you because if we proceed to trial in this matter, the United States Attorney will file a sentencing enhancement information pursuant to 21 U.S.C. § 851, which will at least double the mandatory minimum from ten to 20 years and he could file the enhancement on both of your felony convictions, which would make this a mandatory life case upon conviction.

This letter clearly indicated to the defendant that the filing of a § 851 enhancement was on the horizon. Defense counsel made clear to the defendant that the filing of the enhancement would result in a much longer sentence for the defendant if convicted. The information was indeed filed

on December 22, 1999. The trial of this matter began on January 3, 2000.

The suggestion that the defendant was unaware of the filing of the § 851 information is frivolous. His counsel presented him with a clear understanding of his situation. He noted that a plea offer had been made by the government and that it was in the defendant's best interest to accept it because the filing of the § 851 information would result in a much longer sentence. The defendant opted to disregard his counsel's advice. The defendant now seeks to rewrite history. The court cannot allow him to do so. The court does not find that this argument provides any basis for relief.

Finally, the defendant contends that even if one of his claims of ineffective assistance of counsel is insufficient, the cumulative effect of all of the alleged errors is sufficient to carry his burden. The court has considered all of the defendant's claims of ineffective assistance of counsel and has determined that, whether considered singularly or collectively, the defendant has failed to provide any basis for relief.

The defendant next complains that his sentence is in violation of the rule announced in *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). He notes that the jury was not instructed that drug quantity was an element of either charge against him.

The defendant cannot raise an Apprendi challenge in a § 2255 motion because it contravenes the rules established in *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). *United States v. Mora,* 293 F.3d 1213, 1219 (10th Cir.), cert. denied, 537 U.S. 961, 123 S.Ct. 388, 154 L.Ed.2d 315 (2002). Accordingly, the court finds that the defendant cannot challenge his sentence on this basis in a § 2255 motion.

The defendant next contends that the government committed misconduct when it presented the testimony of Detective Espy to the grand jury. The defendant suggests that this decision by the government constituted misconduct because Detective Espy had previously misled a state court judge in a search warrant affidavit involving him. The defendant argues that this misconduct requires dismissal of the indictment because Detective Espy was the only person who testified before the grand jury.

The court finds no error for several reasons. First, as correctly pointed out by the government, the grand jury based its indictment on testimony of several individuals, including Detective Espy. Thus, the factual allegation contained in the defendant's motion is without support. Second, the defendant has pointed to no false evidence provided by Detective Espy before the grand jury. The defendant suggests only that it is probable that Detective Espy would try to mislead the grand jury because he had done so in the earlier affidavit in support of the search warrant. In sum, the court finds no basis for relief under § 2255.

The remaining arguments, i.e., insufficiency of the evidence, denial of a James hearing, and lack of subject matter jurisdiction, are frivolous for the reasons stated by the government and need no further discussion. Accordingly, the court shall deny the defendant's motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255.

**IT IS THEREFORE ORDERED** that defendant's motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 (Doc. # 91) be hereby denied.

**IT IS SO ORDERED.**