[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
In this action for post-conviction relief, petitioner Reynaldo Rodriguez challenges his conviction after trial by jury in January 2000, as affirmed by the Rhode Island Supreme Court in State v. Rodriguez,798 A.2d 435 (R.I. 2002), for possession of heroin and drug paraphernalia with the intent to deliver. Rodriguez contends that his defense attorney, John M. Cicilline, denied him the effective assistance of counsel by failing to introduce critical exculpatory evidence at trial. He faults his prior counsel for not calling as a witness or presenting the prior sworn testimony of Emiliano Pagan at trial to establish an innocent explanation for defendant Rodriguez's fingerprints being on the box of drug paraphernalia carrying heroin residue in evidence upon which the jury premised its finding that the defendant was in possession of contraband and drug paraphernalia with the intent to deliver.
For the reasons set forth in this Decision, this Court finds that petitioner Rodriguez has failed to meet his burden of proving that his defense counsel's conduct at trial was objectively unreasonable or that such conduct caused the defendant serious prejudice. Accordingly, Rodriguez's petition for post-conviction relief is denied.
 FACTUAL BACKGROUND AND PROCEDURAL HISTORY
The facts relevant to this petition are drawn largely from the underlying criminal trial, as set forth in the Rhode Island Supreme Court's decision on appeal in State v. Rodriguez, 798 A.2d 435 (R.I. 2002). Additional facts emerge from the evidence connected with the post-conviction hearing.
At trial, Sgt. Joseph Lennon of the Providence Police Department testified as to his investigation and subsequent search and seizure of evidence. On May 19, 1997, he executed a search warrant for heroin and "any articles relating to the sale and or use of narcotics" at the Rogers Recreational Center in Providence. In the affidavit for the search warrant, the Providence Police named Leo Cronan, Jr., petitioner's uncle by marriage and Director of the Center, as the target of the investigation. In the affidavit, Sgt. Lennon stated that he believed that Cronan was conducting heroin trafficking in the Center and that he was storing heroin there. He referenced information from a confidential informant, who was working at the Center, that Cronan was observed storing heroin in the ceiling of the shower room and that Cronan was in sole possession of the keys to that room.
As the Providence Police arrived at the Center to execute the search warrant, they were met by Cronan, who was found to be in possession of a set of keys. Sgt. Lennon found that one of the keys that had been on Cronan's person opened a door leading to the shower area. Cronan testified that he had loaned the keys to the Center to five people on occasion, including Rodriguez, who was his nephew by marriage. Cronan asserted that the keys were "like a city key" and could not be copied.
During the search of the shower area, the officers discovered a box containing approximately forty rounds of .45-caliber ammunition above a ceiling panel. In the same location, Sgt. Lennon also discovered a shoe box containing twenty-three separate items, including a coffee sifter containing white residue, two plastic sifters with white residue, ink stamps, scotch tape, masking tape, a digital gram scale, a glass pestle containing white residue, a banking card, a paint brush, a stainless steel spoon, empty glassine packets, a plastic bag, and some rubber bands. A field test conducted by Sgt. Lennon indicated that the white residue on the pestle was heroin which was confirmed by subsequent laboratory tests. The toxicology tests also confirmed that the white residue found on the coffee sifter and the two plastic sifters was heroin.
Based on his experience in narcotics investigations, Sgt. Lennon testified that all of the items in the shoe box were used for "bagging heroin," a process by which heroin is cut with other ingredients to reduce its strength before placing it in smaller bags for sale on the street. He acknowledged that all items found in the box could be purchased legally.
In addition to the testimony from Sgt. Lennon concerning the seizure of the items and his investigation, the State presented the expert testimony of Detective Williams. The Court qualified Detective Williams as an expert in fingerprint identification. He testified that he discovered latent fingerprints on the coffee mill, the glass pestle, and the ammunition box that matched Rodriguez's fingerprints. Specifically, he matched the print of Rodriguez's right ring finger to the print on the coffee mill, the print of Rodriguez's right thumb to the print found on the pestle, and Rodriguez's left thumb print to the print found inside the ammunition box. Detective Williams also identified a palm print on the shoebox as belonging to Rodriguez. He noted that there were two other palm prints on the shoebox that he positively identified as belonging to Emiliano Pagan.
As the investigation continued, Sgt. Lennon questioned Cronan at the police station and determined that he had no knowledge of the items in the box. As a result, the Providence Police brought no charges against him.
Following the discovery of the latent fingerprints and the other evidence, Sgt. Lennon charged Rodriguez and Pagan with possession of heroin with the intent to deliver, distribution or manufacturing of heroin within 300 yards of a school and conspiracy with one another to possess heroin with the intent to deliver. The Court ordered Rodriguez and Pagan held without bail on the new charges, pending a bail hearing.
On May 29, 1997, upon being charged with the new offenses, the State charged Rodriguez, pursuant to Rule 32(f) of the Rhode Island Superior Court Rules of Criminal Procedure, as an alleged violator of a previously imposed suspended sentence for possession of a stolen motor vehicle. Attorney John M. Cicilline represented Rodriguez with respect to the violation. On June 24, 1997, Rodriguez admitted to being a violator and Justice William J. Dimitri, Jr. removed the suspension, imposed an eighteen-month jail term at the Adult Correctional Institutions and re-imposed the remaining portion of the suspended sentence with probation previously imposed. Id. The Court released Rodriguez on bail on the new charges. See State v. Reynaldo Rodriguez, PM 97-2657. It should be noted that Rodriguez did not resolve the new charges against him at the time of his admission to violation based on those charges; rather, he merely admitted to being in violation of his previously imposed suspended sentence. See State v. Reynaldo Rodriguez, C.A. No. P2/92-3222A (admission to violation); State v. Reynaldo Rodriguez, C.A. No. P2/98-4273A (new charges).
On the same date, Pagan entered a plea of nolo contendre to the new charges (inclusive of the charge of conspiracy with Rodriguez to possess heroin with the intent to deliver). Justice Dimitri sentenced him to ten years at the ACI, with one year to serve and nine years suspended, nine years probation, to run concurrently as to all charges. See State v.Emiliano Pagan, P297-2248A.
On December 1, 1998, the Rhode Island Department of Attorney General filed a criminal information against Reynaldo Rodriguez, charging him with possession of heroin with the intent to deliver, possession of drug paraphernalia with the intent to deliver and conspiracy with Emiliano Pagan to possess heroin with the intent to deliver. State v. ReynaldoRodriguez, C.A. No. P2/98-4273A. On January 26, 2000, that case went to trial before a jury in the Providence County Superior Court. Attorney John M. Cicilline again represented Rodriguez.
Prior to trial, the defense filed discovery pursuant to Rule 16 of the Rhode Island Rules of Criminal Procedure by which it notified the State that it intended to call Emilio Pagan as a witness for the defense at trial and that he would testify consistent with his affidavit dated March 24, 1998 that was attached to the discovery response. Id.; see
Petitioner's Exhibit 1 to Post-Conviction Hearing. The defense, however, made no attempt to present any testimony of Pagan at trial. Instead, the defense sought to prove that Cronan was the sole possessor of the drug paraphernalia at issue. The Court determined that the evidence was sufficient to allow the charges to be decided by the jury and denied Rodriguez's Rule 29 motion for judgment of acquittal.
On January 28, 2000, after a two-day jury trial, the jury convicted Rodriguez of one count of possession of heroin with the intent to deliver, one count of possession of drug paraphernalia with the intent to deliver, and one count of conspiracy with Pagan to possess heroin with the intent to deliver. This Court sentenced Rodriguez to a term to twenty-five years at the ACI, with fifteen years to serve and ten years suspended, ten years probation. The Court also sentenced Rodriguez to a consecutive five year term to serve as a habitual offender, without the possibility of parole.[1]
The Rhode Island Supreme Court affirmed the convictions on June 4, 2002. See State v. Rodriguez, 798 A.2d 435 (R.I 2002). On appeal, Rodriguez challenged his convictions, arguing that the Court erred in submitting the case to the jury, as the evidence was legally insufficient for a jury to conclude, beyond a reasonable doubt, that the defendant possessed the drug paraphernalia by dominion and control or that he possessed heroin with the intent to deliver. Id. Rodriguez also claimed that the Court erred in qualifying the State's fingerprint expert. Id. At a pre-briefing conference, a single justice of the Supreme Court vacated the defendant's conviction and sentence on the conspiracy charge and dismissed the second count of the criminal information based on the State's concession, for unspecified reasons, that the evidence was legally insufficient to support the conspiracy charge.[2] Id. The Supreme Court, in a per curiam decision issued on June 4, 2003, dismissed the defendant's appeal and affirmed the judgment of the Superior Court with regard to Counts 1 and 3 of the criminal information.[3] Id.
The Supreme Court found that the evidence of Rodriguez's fingerprints on four different objects associated with a "methamphetamine lab box," Sgt. Lennon's testimony that there was no other explanation for how those objects would be used other than to bag heroin, and the circumstantial evidence that defendant was one of six people who had access to the Center during the time period in question, was in its totality sufficient circumstantial evidence to allow a jury to conclude, beyond a reasonable doubt, that Rodriguez possessed the heroin with the intent to deliver and possessed the drug paraphernalia by dominion and control with the intent to deliver. It also found that it was not an abuse of discretion for the Court to qualify Detective Williams as an expert for the State in the field of fingerprint identification based on his education, training and experience.
On October 22, 2002, petitioner Reynaldo Rodriguez filed pro se an Application for Post-Conviction Relief with this Court. In his petition, he alleged "lack of preparation, lack of use of witnesses, and general ineffectiveness of counsel." The State filed an objection to that petition. The Public Defender's Office declined to represent petitioner Rodriguez, citing a conflict of interest involving its prior representation of Pagan and office ties to Cronan. The private attorney initially appointed by the Court to represent Rodriguez entered his appearance, but subsequently withdrew, with the Court's consent, on grounds of conflict of interest. This Court then made a second appointment of private counsel, namely current counsel James T. McCormick, to represent Rodriguez in connection with his petition for post-conviction relief.
On February 17, 2004, at the request of petitioner Rodriguez and with the consent of the State, this Court convened an evidentiary hearing in connection with Rodriguez's request for post-conviction relief. The sole issue at that hearing, as agreed by the parties, was whether defense counsel's failure to present the testimony of Pagan at trial (either live or through introduction of his prior hearing testimony) constituted ineffective assistance of counsel, in violation of the Sixth Amendment to the United States Constitution, warranting a new trial.
At the hearing, petitioner Rodriguez presented John M. Cicilline, his prior trial counsel, as the sole witness in support of his petition. Rodriguez did not testify. The State presented no evidence. Through Cicilline, petitioner Rodriguez introduced into evidence: the Rule 16 disclosure that defense counsel filed and served on the State prior to trial (which stated that the defense intended to call Emilio Pagan as a witness in defense at trial to testify consistent with the attached affidavit) (Petitioner's Exhibit 1 to the Post-Conviction Hearing); a copy of an affidavit executed by Emiliano Pagan on March 24, 1998 that defense counsel attached to the Rule 16 notice (Petitioner's Exhibit 2 to the Post-Conviction Hearing); and a transcript of testimony, consistent with the affidavit, that Emiliano Pagan gave in a hearing before Justice Dimitri on July 7, 1998 in State v. Reynaldo Rodriguez, PM98-1505 (Petitioner's Exhibit 3 to the Post-Conviction Hearing).
The affidavit is a typewritten document containing eleven paragraphs which relates a version of events occurring on May 14, 1997 in which Pagan claims full ownership of the items seized and provides an explanation of how the fingerprints of Rodriguez, innocently, came to be on the items. In that affidavit, Pagan swore to the following:
 1. On or about the 14th of May 1997 I was at the Rogers Recreational Center in Providence playing basketball.
 2. That evening Reynaldo Rodriguez arrived at the Recreation Center to play basketball as well.
 3. At that time, I had in my possession a plastic bag containing a closed shoe box which contained drug paraphernalia.
 4. Sometime after 6:00 PM that evening I observed Mr. Rodriguez leaving the Recreation Center after playing basketball.
 5. I approached Mr. Rodriguez and asked him for a ride to my mother's house.
 6. Mr. Rodriguez agreed and we both proceeded to his car which was in the parking lot.
 7. Upon entering his car I placed the plastic bag on the front passenger seat and asked Mr. Rodriguez to wait for a moment while I went back to the Recreation Center to do something.
 8. When I returned to the car a few minutes later Mr. Rodriguez informed me that he had looked through the box and noticed the drug paraphernalia.
 9. He proceeded to tell me that he was on probation and that he would have to ask me to remove the box from his car.
 10. I took the box and returned with it to the Recreational Center to hide it.
 11. When I returned to the parking lot again Mr. Rodriguez and his car were no longer there.
Petitioner's Exhibit 3 to the Post-Conviction Hearing.
In Pagan's prior hearing testimony from July 7, 1998, upon direct examination by John M. Cicilline (counsel to Rodriguez at that hearing), he essentially reiterated and expanded upon the statements contained in his affidavit. See Petitioner's Exhibit 3 to the Post-Conviction Hearing. He acknowledged that he had been arrested on May 28, 1997 for possession of heroin with the intent to deliver. He said that he later found out that Rodriguez, too, got locked up at that time. He recalled his plea in June 1997 and Rodriguez's violation hearing. He claimed that he never ran into Rodriguez thereafter at the ACI until March 1998 at which time, after speaking with Rodriguez, he prepared the affidavit.Id.
Pagan testified that he told Rodriguez the following story. On May 14, 1997, he came to the Center to play basketball when he ran into some young Oriental kids who were playing with a shoe box full of drug paraphernalia. He grabbed the box, looked through it, recognized it as drug paraphernalia and then closed up the box. He took the box because he had a drug habit and figured he could sell it and make money for his habit. Pagan said he saw Rodriguez in the Center that day shooting basketball and, after they played, Pagan asked him for a ride to his mother's house. He put the shoe box inside the bag in the car (while Rodriguez was standing outside the car) and then returned to the gym to use the bathroom. When he came out, Rodriguez was standing next to the car with the stuff on top of the car. Pagan did not see what Rodriguez did with the box. According to Pagan, Rodriguez said "what are you doing with this in my car? You know I'm on probation. Why don't you get this out of here?" Pagan said that he then grabbed the box in the bag and hid it in the ceiling of the bathroom in the Center. When he came out, Rodriguez was gone. Id.
On cross-examination at the hearing, Pagan testified that he never went back to retrieve the box and that he did not see Rodriguez again for the ensuing two weeks before their arrest. He denied touching anything inside the box when he examined it. He asked "how could I look through the box if my fingerprints wasn't on it?" He thought Rodriguez had touched the box and that was why Rodriguez was mad at him. Pagan claimed that he was the only one who was supposed to have the box. He denied having hid items in the ceiling before and did not think that anyone touched the box between the time he put it in the ceiling and his arrest. Id.
Although Pagan admitted during the course of his prior hearing testimony that he pled nolo contendre to conspiring with Rodriguez to possess heroin with the intent to deliver in June 1997, he claimed that he never saw his own criminal complaint that the State filed against him (either directly or through his lawyer) before his plea, that he did not know with whom he pled to conspiring at the time of the plea, and that he did not learn that Rodriguez was in jail because of him until March 1998 when he ran into Rodriguez at Medium Security. Pagan claimed that even though he saw Rodriguez at the ACI in June 1997, he had no communication with him regarding why Rodriguez was serving time nor did he learn that Rodriguez was serving time in connection with the box until their discussion in March 1998. The thrust of his prior testimony was that it was not until his chance encounter with Rodriguez at Medium Security in March 1998 — ten months after the date on which both Pagan pled to the drug possession and conspiracy charges and Rodriguez admitted to violation of a previously imposed suspended sentence based on those same drug possession and conspiracy charges — that he learned of the nature of the charges against Rodriguez, at which time he then signed an affidavit in defense of Rodriguez. Id.
At the post-conviction hearing, petitioner Rodriguez presented the testimony of John M. Cicilline, his defense counsel at trial, to attempt to establish that his prior counsel erred in not calling Pagan as a live witness for the defense at trial or seeking to admit into evidence at trial the transcript of Pagan's prior hearing testimony before Justice Dimitri on July 7, 1998 based on Pagan's unavailability to testify live at trial. This Court took judicial notice in the post-conviction hearing, at the request of the petitioner, that at the time of the trial in this matter, there was an outstanding warrant for Pagan. Magistrate McAtee issued that warrant on October 19, 1999, in State v. EmilianoPagan, P2/1999-3344A, for Pagan's failure to appear at a pre-arraignment conference. The Court did not quash that warrant until April 14, 2000. At trial, defense counsel made no attempt to call Pagan as a witness, ask the Court to declare him unavailable or seek to introduce the transcript of his July 7, 1998 hearing testimony in light of his purported unavailability.
In his testimony, John M. Cicilline acknowledged that he is an experienced criminal defense attorney who has practiced law in Rhode Island for over 18 years, represented defendants in over 100 criminal jury trials and worked closely with his father, John L. Cicilline (a premier criminal defense attorney in the State), and his brother, David Cicilline (also a seasoned criminal defense attorney), to build and perpetuate a top-notch criminal defense practice. He testified that his theory of defense of Rodriguez at trial was to marshal all of the evidence to point to Cronan as the person solely responsible for the drugs and drug paraphernalia at issue, as all of the evidence pointed to Cronan. After all, Cronan was the target of the police investigation, as referenced in the search warrant affidavit. An informant had given the police information, determined by the police to be reliable, that Cronan was the sole possessor of the keys to the shower room and had been observed storing heroin in the ceiling of the shower room. Cronan was the Director of the Center where the police found the drugs and drug paraphernalia and was in possession of a key to the shower room when the police executed the search warrant.
Mr. Cicilline testified that he did not really consider that a jury could find joint possession between Cronan and Rodriguez because all of the evidence pointed to Cronan. While he acknowledged that there was fingerprint evidence against Rodriguez and that he did not offer any evidence to explain away these fingerprints, he claimed that he did not really focus on the fingerprint evidence because the evidence against Cronan was so strong, and he thought that the jury would find that the paraphernalia belonged to Cronan.
Mr. Cicilline further admitted that Pagan could have explained how Rodriguez's fingerprints innocently got on the shoe box of drug paraphernalia. He said that he talked to Rodriguez about Pagan testifying. While Rodriguez may have told him that he (Rodriguez) could produce Pagan if "we needed him," he has no specific recollection of such a conversation or of Rodriguez asking him to produce him. He stated that he and Rodriguez would discuss matters but that he, as counsel, would make most of the decisions. Mr. Cicilline said that he could not get Pagan to court "for some reason," perhaps because he was fighting with Rodriguez. He admitted that "something was going on with Pagan" — maybe he was in trouble, in jail or on drugs or something. On cross-examination, Mr. Cicilline admitted that Pagan was wanted for robbery at the time of the trial (at which time, at petitioner's request, this Court took judicial notice of the bench warrant issued by the Court for Pagan in October 1999 that was still outstanding at the time of Rodriguez's trial).
Mr. Cicilline further testified that he assumed that he had a memory of Pagan testifying in 1998 before Justice Dimitri, but that he did not think about it at the time of Rodriguez's trial in 2000. He did not think about putting a transcript of Pagan's prior testimony into evidence at Rodriguez's trial. If Pagan had given the testimony contained in his affidavit, Mr. Cicilline testified that it would have made a difference in the outcome as of today because the fingerprints were important, and it would have explained how Rodriguez's prints innocently came to be on the items of drug paraphernalia. He said that the transcript would have been a perfect way to get the testimony before the jury and that it could have made a difference, although he had to admit that he had not read the transcript and that he was only assuming that testimony was consistent with the affidavit.
When asked if he believed that he was effective or ineffective as counsel for Rodriguez at trial, Mr. Cicilline said that, at the time of trial, he thought that he did a great job; but looking back on it, "you always have second guesses." He said that the more he looks at it today, it would have helped to have Pagan as a witness or submitted his affidavit, and he cannot recall why he did not. He stopped well short, however, of declaring himself ineffective.
On cross-examination, Mr. Cicilline acknowledged that he did not prepare the affidavit and that it looked like it might have been prepared at the ACI. When asked about the nature of the hearing before Justice Dimitri on July 7, 1998, he was vague. He stated that, at that hearing, he had moved to reduce the sentence on violation previously imposed on Rodriguez "or something like that." He had no recollection of the nature of the motion that prompted that hearing. He further admitted that, after that hearing, at which Pagan testified in favor of Rodriguez, Rodriguez's sentence on violation stayed the same.
Mr. Cicilline had to admit as well that in the affidavit, Pagan said that the paraphernalia was his such that presenting that testimony would have undermined the defense theory that the paraphernalia belonged exclusively to Cronan. He also had to acknowledge that Pagan had pled nolo contendre to conspiracy with Rodriguez and had a lengthy criminal record such that putting Pagan on the stand or presenting his prior sworn hearing testimony could have brought out those facts and potentially hurt Rodriguez's case. Mr. Cicilline freely admitted in this regard that he would not have wanted to do anything to undercut his defense theory about Cronan. Mr. Cicilline also had to admit that in the transcript of Pagan's prior testimony (which Mr. Cicilline conceded he did not read before testifying), Pagan admitted to pleading nolo contendre to a charge of drug conspiracy but denied that he knew at the time of his plea that such charge involved Rodriguez. Mr. Cicilline minimized the harmfulness of this testimony, describing it as something that would have presented a "bump in the road" at trial but would not have destroyed the defense because Pagan's testimony as a whole would have explained how Rodriguez's prints innocently came to be on the drugs and paraphernalia. According to Mr. Cicilline, if he could have explained away the prints, it "would have put me in the game." When asked, however, if that piece of evidence would have come at a great cost to his defense theory, he said "yes, but that it would have given him a little opportunity."[4]
Petitioner Rodriguez did not present any testimony of Pagan at the post-conviction hearing. According to petitioner's counsel at the hearing, Pagan initially indicated that he would appear at the hearing, but as the date got closer, his interest in testifying waned. At one point, counsel attempted to have a subpoena served upon Pagan in Sixth Division District Court, but Pagan got very angry and refused to testify. Counsel filed with the Court two subpoenas that had been served on Pagan requiring Pagan to appear for the post-conviction hearing (on two dates prior to the date on which the hearing actually took place) and stated that Pagan failed to appear on those dates.
Following the post-conviction hearing, Rodriguez filed a legal memorandum in support of his request for post-conviction relief, the State filed a memorandum in support of its objection to petitioner's request for post-conviction relief, and Rodriguez filed a memorandum in response to the State's memorandum. In rendering this Decision, this Court has considered the evidence adduced in the underlying criminal trial of State v. Reynaldo Rodriguez, P298-4273A (as affirmed by the Rhode Island Supreme Court in State v. Rodriguez, 798 A.2d 435 (R.I. 2002)), the evidence presented during the post-conviction hearing (inclusive of the testimony of John M. Cicilline and petitioner's exhibits), the post-hearing memoranda filed by the parties and other matters of public court record, referenced in this Decision, that are pertinent to this Court's consideration of Rodriguez's petition for post-conviction relief.
 STANDARD OF REVIEW
Under the Rhode Island Post-Conviction Relief Act, a person who has been convicted of, or sentenced for, a crime, who claims that the "conviction or sentence was in violation of the constitution of the United States or the constitution or laws of this state," may institute an action for post-conviction relief. R.I. Gen. Laws § 10-9.1-1(a) (1). Any claim of error that is not raised when available and during the appropriate phases of the process (pre-trial, trial, or on appeal) is barred from review under the Post-Conviction Relief Act. R.I. Gen. Laws § 10-9.1-8; State v. Carvalho, 450 A.2d 1102 (R.I. 1982) (held that available claims, other than ineffective assistance of counsel claims, not raised on direct appeal could not be raised in post-conviction proceeding); Cronan ex rel., 774 A.2d 866, 877-878 (R.I. 2001); R.I. Super. Ct. R. Crim. P. 12(b) (2). The Rhode Island Supreme Court has held that the appropriate avenue for raising a claimed violation of the Sixth
Amendment by ineffective assistance of counsel is not by direct appeal, but rather through this post-conviction relief statute. State v.Freitas, 399 A.2d 1217, 1219 (R.I. 1979) ; State v. Gibbons, 418 A.2d 830,839 (R.I. 1980).
The petitioner bears the burden of proving an ineffective assistance of counsel claim by a preponderance of the evidence. State v. Dunn,726 A.2d 1142, 1145 (R.I. 1999); Palmigiano v. Mullen, 377 A.2d 242, 248
(R.I. 1977). Based on dicta in the Supreme Court's decision in Dunn, that burden may be particularly difficult to surmount when such a claim involves the effectiveness or ineffectiveness of private counsel. Dunn,726 A.2d at 1146 n. 4. As the Supreme Court noted:
 rarely, if ever, following conviction has any federal or state court permitted a defendant who has been represented by private counsel to later question, in post-conviction proceedings, the ineffectiveness or inefficiency of the trial counsel that the defendant chose and selected to represent him or her at trial. The incompetency (or one of its many synonyms) of private counsel for the defendant in a criminal prosecution is neither a denial of due process under the Fourteenth Amendment, nor an infringement of the right to be represented by counsel under either the federal or state constitution, unless the attorney's representation is so lacking that the trial has become a farce and a mockery of justice, in which case the judgment, violating either the Fifth, Sixth, or Fourteenth Amendment to the Federal Constitution, or a provision of a state constitution, is void.
Id. (quoting Annotation, Incompetency of Counsel, 74 A.L.R. 2d 1390, 1397 (1960)).
In reviewing a claim of ineffective assistance of counsel, the Rhode Island Supreme Court has stated that the core issue is "whether `counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.'" Bustamante v. Wall, 866 A.2d 516, 522 (R.I. 2005) (citing Toole v. State, 748 A.2d 806, 809 (R.I. 2000)) (quoting Tarvisv. Moran, 551 A.2d 699, 700 (R.I. 1988)). In evaluating claims of ineffective assistance of counsel, the Supreme Court follows the standard enumerated in the seminal United States Supreme Court decision ofStrickland v. Washington, 466 U.S. 668 (1984). Bustamante, 866 A.2d at 522;Hampton v. State, 786 A.2d 375 (R.I. 2001).
The two-pronged Strickland test requires the petitioner to prove first that counsel's performance was deficient, to the point that the errors were so serious that trial counsel did not function at the level guaranteed by the Sixth Amendment. Brennan v. Vose, 764 A.2d 168, 171
(R.I. 2001) (citing Strickland, 466 U.S. at 687). If the petitioner successfully meets the first prong of the test, he or she then must prove that prejudice resulted from the error. Strickland at 687. The petitioner must show that such deficient performance was so prejudicial to the defense and the errors were so serious as to amount to a deprivation of his or her right to a fair trial. Bustamante at 522.
In applying the first prong of the test, the performance of counsel is evaluated by determining whether the performance fell below an objective standard of reasonableness. Strickland, 466 U.S. at 688; Tarvis,551 A.2d at 701. In applying that standard, the totality of the circumstances must be considered. Id. The Rhode Island Supreme Court has recognized that there is a strong presumption that an attorney's performance falls within the range of acceptable professional standards and assistance, establishing a heavy burden for a party to establish constitutionally ineffective representation. Ouimette v. State,785 A.2d 1132, 1139 (R.I. 2001). Mere tactical decisions, though ill-advised, do not by themselves constitute ineffective assistance of counsel. Bustamante, 866 A.2d at 523 (quoting Toole, 748 A.2d at 809);State v. D'Alo, 477 A.2d 89, 92 (R.I. 1984) (quoting United States v.Bosch, 584 F.2d 1113, 1121 (1st Cir. 1978)). "[A] choice between trial tactics, which appear unwise only in hindsight, does not constitute constitutionally defective representation under the reasonably competent assistance standard." Toole, 748 A.2d at 809 (quoting Bosch,584 F.2d at 1121); see also Powers v. State, 734 A.2d 508, 522 (R.I. 1999) (defense counsel's decision not to call an expert witness was purely a strategic decision not amounting to ineffective assistance of counsel). "[F]or counsel's [decision] to rise to the level of constitutional ineffectiveness, the decision must have been completely unreasonable, not merely wrong, so that it bears no relationship to a possible defense strategy." United States v. Chandler,291 F. Supp. 2d 1204 (D. Kan. 2003) (quoting United States v.Oliceras, 717 F. 2d 1, 4 (1st Cir. 1983)). Mere evidence of a mistake on the part of counsel is insufficient to meet the performance prong of the test. Id. The defendant must show not only that counsel made a mistake, but that the mistake was an objectively unreasonable one under the circumstances. Id.
If a petitioner is able to establish the first prong of the Strickland
test by demonstrating that counsel's performance was objectively unreasonable, he or she then must establish that the failed performance resulted in serious prejudice. State v. Brennan, 627 A.2d 842, 848 (R.I. 1993). Specifically, Strickland requires the petitioner to show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.Strickland, 466 U.S. at 694. A reasonable probability is a probability sufficient to undermine the confidence in the outcome. Id. The standard focuses on the reliability of the outcome. Id. It is not enough for the petitioner to show that the errors had some conceivable effect on the outcome of the proceeding; not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding. Id. at 693. The United States Supreme Court has set the level of the defendant's burden of proof for showing that the error resulted in an unreliable outcome at a level less than a preponderance of the evidence. Id. at 694.
 DISCUSSION
Consistent with these precepts, petitioner Rodriguez initially has the burden under the first prong of the Strickland test to prove that his defense counsel's conduct in not calling Pagan as a witness at trial or presenting his prior sworn testimony was objectively unreasonable. He fails to sustain that burden.
Petitioner Rodriguez initially challenges defense counsel's failure to call Pagan as a witness at trial. Yet petitioner did not call Pagan as a witness in the post-conviction hearing.[5] As a result, there is no evidence before this Court as to what Pagan would have said if he had been called as a witness at trial and whether he would have been credible and thus helpful to the defense at trial. Absent Pagan's testimony at the post-conviction hearing, there is no evidence to suggest that Pagan would have testified at trial consistent with his affidavit or prior hearing testimony. Even assuming consistency in that regard, the failure to present Pagan's testimony at the post-conviction hearing deprived this Court of the opportunity to hear his "trial testimony" firsthand and to assess its weight and credibility. Without that opportunity, this Court lacks any evidence to determine, as petitioner suggests, that the failure to present that testimony (whatever it would have been) was exemplary of his defense counsel's ineffectiveness at trial. Any claim that prior defense counsel erred in not calling Pagan as a witness to testify live at trial, therefore, must be rejected.
Perhaps mindful of this dearth of evidence, petitioner Rodriguez contends, in the alternative, that it was objectively unreasonable for Mr. Cicilline to fail to introduce at trial Pagan's affidavit or prior testimony from the July 7, 1998 hearing. Petitioner cannot prove such claims, however, without proof, as to the affidavit, that the statements contained within it were subject to authentication and cross-examination and, as to both the affidavit and transcript, that Pagan was unavailable to testify at trial.
Under Rule 804(b) (1) of the Rhode Island Rules of Evidence, the prior sworn testimony of a witness may be admissible in a subsequent proceeding, and not excluded by the hearsay rule, if the party against whom the prior testimony is offered had the opportunity to cross examine the witness at the prior proceeding and the witness is not available at trial. Unavailability, within the meaning of Rule 804(b), includes situations in which the witness:
 (1) is exempted by ruling of the court on the ground of privilege from testifying concerning the subject matter of the declarant's statement; or
 (2) persists in refusing to testify concerning the subject matter of his [or her] statement despite an order of the court to do so; or
 (3) testifies to a lack of memory of the subject matter of his or her statement; or
 (4) is unable to be present or to testify at the hearing because of death or then existing physical or mental illness or infirmity; or
 (5) is absent from the hearing and the proponent of his or her statement has been unable to procure the declarant's attendance by process or other reasonable means.
 A declarant is not unavailable as a witness if the declarant's exemption, refusal, claim of lack of memory, inability, or absence is due to the procurement or wrongdoing of the proponent of the declarant's statement for the purpose of preventing the witness from attending or testifying.
Rule 804(a), Rhode Island Rules of Evidence.
The affidavit that petitioner had marked as Exhibit 2 in the post-conviction hearing would not have been able to have been admitted into evidence at trial (notwithstanding Mr. Cicilline's suggestion during the course of his post-conviction hearing testimony that he should have introduced the affidavit), as it was never authenticated as a sworn statement of Pagan nor was it subject to cross-examination. See Flynn v. Al-Amir,811 A.2d 1146, 1152-53 (R.I. 2002) (Supreme Court upheld trial court's exclusion of affidavit from evidence as the affiant was not subject to cross-examination);Andrews v. Masse, 341 A.2d 30, 31 (R.I. 1975) (finding that evidence offered in affidavit form "denies the fact finder an opportunity to observe the demeanor of witnesses, permits evidence to be presented in a document which ofttimes has been prepared by a person other than the affiant, and cuts off the right to cross-examination"); see generally Rhode Island Rules of Evidence, Rules 801, 802 and 803. Indeed, the source of the affidavit is unclear. The affidavit carries the case caption: State v. Reynaldo Rodriguez, C.A. No. PM97-2657 (the case number assigned to the bail hearing in May 1997 at the time the Court first arraigned Rodriguez on the drug charges that later ripened into the criminal information underlying his conviction that is the subject of the instant petition), and yet there is no evidence as to who prepared the affidavit (Mr. Cicilline speculated that it was drafted at the ACI) or whether the affidavit was used in connection with that bail hearing or otherwise.
Moreover, there is insufficient evidence that Pagan was unavailable to testify at trial — a necessary predicate to the admissibility of his prior sworn testimony in lieu of his live testimony at trial.[6]
There is no direct evidence that Pagan would have been unavailable, as there is no evidence that either Rodriguez or his prior counsel requested or subpoenaed Pagan to testify at trial. In addition, Pagan is the one who could best testify as to whether he would have testified at trial for Rodriguez either voluntarily or in response to a subpoena, and yet petitioner failed to present any testimony of Pagan at the post-conviction hearing.
Instead, petitioner Rodriguez suggests that Pagan was unavailable because he was wanted on a robbery charge and a warrant had been issued for his arrest. Rodriguez argues that Pagan's status as a fugitive at the time of trial proves his unavailability; if the police could not locate him, then it is not reasonable to expect that defense counsel, lacking the resources and authority of the State, could have done so. See Petitioner Reynaldo Rodriguez's Post-Conviction Memorandum at 5-6, 8. To support this argument, petitioner Rodriguez made, and this Court granted, a request for this Court, at the post-conviction hearing, to take judicial notice of the fact that the Superior Court, in State v. EmilianoPagan, P299-3344A, had issued a warrant on October 19, 1999 for Pagan and that such warrant remained outstanding at the time of trial and was not quashed until April 2000.
The mere fact, however, that Pagan was wanted on an outstanding warrant at the time of Rodriguez's criminal trial, however, does not prove that Pagan was unavailable to testify for Rodgriguez at trial. Petitioner Rodriguez and his prior defense counsel tried to portray Pagan as a fugitive from justice on a serious robbery charge at the time of trial, such that no one would have been able to procure him, with a subpoena or otherwise, as a witness at trial. Yet the warrant at issue, according to the court file of which petitioner asked this Court to take judicial notice, was issued for Pagan's failure to appear for a prearraignment conference regarding a charge of larceny from a person (a charge that the State ultimately dismissed) on which Pagan had previously been arraigned and for which he had previously appeared. Indeed, Pagan appeared even after the arraignment, and while out on bail, for a violation hearing in that case. Thus, the pendency of that warrant alone (particularly absent evidence of the additional circumstances regarding its issuance and quashing or proof of an unsuccessful attempt by defense counsel to subpoena Pagan or otherwise arrange for his appearance at trial) does not prove Pagan's unavailability for trial.
In an effort to create evidence of Pagan's unavailability after the fact, Mr. Cicilline attempted to suggest that he could not have gotten Pagan to court for trial even if he had decided to call him as a defense witness. He said that "something was going on with Pagan" — he suggested that "maybe Pagan was fighting with Rodriguez" or was "in trouble," "in jail," "on drugs" or "something." He later testified on cross examination, upon review of the case in which there was an outstanding warrant, that Pagan was wanted for robbery. Yet in apparent contrast to this testimony, Mr. Cicilline also testified that Pagan was going to come in and be available to him as a defense witness and that Rodriguez may have told him that he could produce Pagan "if we needed him."
Based on all of this evidence, this Court concludes that it would be engaging in rank speculation were it to conclude that Pagan was unavailable to testify at trial. Defense counsel did not subpoena him or request that he testify at trial voluntarily. There is no evidence that had defense counsel subpoenaed Pagan, he would have failed to appear for trial. There is no evidence that had Rodriguez or his counsel asked Pagan to testify voluntarily, he would have refused. Neither Pagan nor Rodriguez, key witnesses as to such issues, testified at the post-conviction hearing. While the outstanding warrant creates a possibility that Rodriguez "[would not have been able] to procure [Pagan's] attendance by process or other reasonable means," so as to make Pagan "unavailable" within the meaning of Rule 804 (a) (5), this Court is not satisfied, particularly in light of the evidence that Rodriguez had been able to secure Pagan's cooperation (through his affidavit and July 8, 1998 hearing testimony) in the past and the testimony indicating that Rodriguez might have been able to secure him for trial "if needed," that petitioner Rodriguez has proven, by a preponderance of the evidence, that Pagan was unavailable to testify at trial. Absent such proof, petitioner Rodriguez fails to establish an essential predicate to him claim of ineffective assistance of counsel, namely that Mr. Cicilline, in light of Pagan's unavailability, should have presented Pagan's prior sworn hearing testimony.
Moreover, even assuming, arguendo, that petitioner Rodriguez could be found to have proven at the post-conviction hearing that Pagan was unavailable at the time of trial such that Mr. Cicilline could have presented the prior sworn testimony of Pagan at trial, it is the judgment of this Court that Mr. Cicilline made a sound tactical decision at the time, with full knowledge of Pagan's affidavit and prior hearing testimony, not to present Pagan as a witness at trial. Pagan's story — while seeming to cast Rodriguez's fingerprints on the drug paraphernalia in an innocent light — carried the very real danger, if presented to the jury, of implicating rather than exculpating Rodriguez. After all, Pagan pled nolo contendre to the very charge of conspiracy with Rodriguez to possess heroin with the intent to deliver on which Rodriguez was being tried. In addition, Pagan's prior sworn testimony would not have explained Rodriguez's possession of a key to the shower room or his fingerprints on the ammunition box found in the ceiling with the drug paraphernalia. It would not have explained how Rodriguez's fingerprints were found on the drug paraphernalia in places consistent with the use of the paraphernalia (as opposed to places, consonant with Pagan's prior hearing testimony, associated with examining the content of the box only long enough to know that he did not want to be associated with it while on probation). Pagan's prior hearing testimony would have been inconsistent with the defense theory, which arose out of the search warrant affidavit, that it was Cronan alone who possessed the drugs and drug paraphernalia.
In addition, although this Court has never had occasion to assess Pagan's credibility directly based on his live in-court testimony, the transcript of his prior testimony itself raises substantial credibility issues. Even though Pagan testified that he and Rodriguez were arrested and charged on the same date with the same offenses (inclusive of conspiring with one another to possess heroin), entered a plea to those charges (in the case of Pagan) and admitted violation to those charges (in the case of Rodriguez) in court on the same date, and saw each other in the Intake Unit of the ACI in June 1997, Pagan claimed that they never discussed their cases until March 1998, that he had no knowledge of why Rodriguez was in jail, and that he had no recollection of pleading to conspiracy with Rodriguez to possess heroin with the intent to deliver in June 1997. These statements just do not ring true, especially because Pagan's 1998 hearing testimony to benefit Rodriguez did not come until after Pagan had nothing to lose. Pagan already had pled nolo contendre to and served time for the crimes with which Rodriguez had been charged.
Furthermore, Pagan's story itself does not make a lot of sense. It reads as a contrived way to explain how Pagan and Rodriguez both just happened to touch the very parts of the box on which were found their fingerprints, without explaining why Pagan would take the box for his habit if it only contained drug paraphernalia, why Rodriguez would open Pagan's bag in the car and handle the items in a box in the first place, why Rodriguez would handle the items in the box if he were worried about being associated with them, or how Pagan would locate a ceiling hiding place on the spur of the moment. Moreover, had Rodriguez presented Pagan's prior hearing testimony at trial, the State could have offered evidence of Pagan's plea and extensive criminal history to further undermine his credibility.
Only by ignoring these credibility issues could Mr. Cicilline testify at the post-conviction hearing that, with hindsight, he was wrong not to have called Pagan as a witness or presented his affidavit and that, had he done so, it would have been helpful and made a difference in the outcome of Rodriguez's trial. He was able to ignore the credibility issues because he premised his post-conviction hearing testimony, at least in the first instance, on the substance of Pagan's affidavit rather than on the substance of Pagan's prior hearing testimony. In fact, he conceded on cross-examination that he had not even read the transcript of Pagan's post-conviction hearing testimony (Petitioner's Exhibit 3 to Post-Conviction Hearing) and that he simply had assumed that testimony to be consistent with the affidavit.
Mr. Cicilline also was conveniently quite vague as to his recollection of the nature of the hearing before Justice Dimitri. The transcript of that hearing admitted into evidence in the post-conviction hearing as Petitioner's Exhibit 3 that was used to confront and cross-examine Mr. Cicilline was (perhaps intentionally) incomplete; it referenced only the case caption (Statev. Reynaldo Rodriguez, PM98-1505), stated the fact that John M. Cicilline represented Mr. Rodriguez at that hearing with Stephen Regine as counsel for the State and contained only the sworn testimony of Pagan. The transcript in evidence did not contain a statement of the nature of the hearing, the arguments of counsel or the Court's decision. Mr. Cicilline testified that he had no recollection of the motion he filed that led to that hearing. He characterized it as a motion to reduce Rodriguez's violation sentence "or something like that" that was unsuccessful. There was nothing placed before Mr. Cicilline with which to "refresh" his recollection, and the State made no effort to further elucidate this issue.
In reality, however, Mr. Cicilline was aware (or should have been aware) at the time of trial (and at the time of the post-conviction relief hearing) of the credibility problems associated with Pagan's prior hearing testimony and the dangers of building a defense for Rodriguez around that testimony. Indeed, it seems disingenuous for Mr. Cicilline to suggest otherwise when it was he who represented Rodriguez at the July 8, 1998 hearing before Justice Dimitri when the Court, at that time, rejected outright the same story of Pagan on which Rodriguez now premises his post-conviction relief petition.
This Court's review of the court file in the underlying case of State v. Reynaldo Rodriguez, C.A. No. PM97-2657 that gave rise to the July 8, 1998 hearing before Justice Dimitri confirms that it was an action for post-conviction relief (not unlike the petition before this Court) that Rodriguez filed pro se on March 27, 1998. As grounds for that petition, Rodriguez stated that he had been incarcerated as a probation violator in June 1997 (see State v. Reynaldo Rodriguez, C.A. No. P2/92-3222A), but that newly discovered evidence existed (namely a confession from Pagan) that should entitle him to a new violation hearing. He referenced and attached to his petition the affidavit from Pagan (Petitioner's Exhibit 2 to the Post-Conviction Hearing). With no other intervening events, Rodriguez's petition for post-conviction relief came on for hearing before Justice Dimitri on July 7, 1998 with John M. Cicilline representing Rodriguez.
Additional facts relevant to that hearing can be gleaned from a review of the transcript of the arguments and decision of Justice Dimitri that followed Pagan's testimony.[7] In that hearing, petitioner Rodriguez presented Pagan's testimony and then argued that it constituted newly discovered evidence that should entitle him to a reduction of his violation sentence to credit for time served. The State responded that Pagan's testimony could not constitute newly discovered evidence because Rodriguez would have had to have known of the substance of that testimony at the time of the violation hearing and yet nonetheless freely admitted to the violation.
After hearing Pagan's testimony, Justice Dimitri denied Rodriguez's petition for post-conviction relief and determined that it was not premised on newly discovered evidence. Rodriguez, after all, had admitted to being a violator based, at least in part, on a new charge of conspiracy with Pagan. The Court found Pagan's testimony "highly incredible." In fact, the Court stated that it "[did not] accept any testimony of Mr. Pagan." Significant to the Court in this regard was the fact that Pagan had pled nolo contendre to a charge of conspiracy with Rodriguez.
Mr. Cicilline knew, therefore, at the time of Rodriguez's criminal trial (or should have known) that Pagan's story of an innocent explanation for Rodriguez's fingerprints being on the drug evidence had not been believed, with good reason, by Justice Dimitri as trier of fact at the July 8, 1998 post-conviction relief hearing and probably would not be believed by the jury at trial. He knew (or should have known) of the credibility problems associated with Pagan's story even absent Justice Dimitri's decision. If Pagan were not believed, the jury would be free to use his testimony to corroborate, rather than to contradict, the damning physical evidence and expert testimony against Rodriguez. Calling Pagan also carried the added risk, in light of Pagan's plea and criminal history, of assisting the State in proving a drug conspiracy between Rodriguez and Pagan as well as proving the substantive drug related charges against Rodriguez. A defense based in whole or in part upon Pagan's testimony also would have undermined a defense built on Cronan as the target.
In this Court's judgment, therefore, Mr. Cicilline consciously and conscientiously decided, after consultation with Rodriguez, not to call Pagan as a witness at trial and chose instead to mount the next best defense that he could by trying to point to Cronan as the individual in sole possession of the drug paraphernalia. The Cronan defense, while not perfect given the fingerprint evidence against Rodriguez and the possibility of a finding of joint possession, gave the defense an opportunity to exploit the search warrant affidavit that targeted only Cronan and seek to disqualify or impeach the State's fingerprint expert who also was a detective. Mounting that defense arguably carried fewer risks than an incredulous defense built on co-conspirator Pagan. It was a decision, frankly, that was not only objectively reasonable under the totality of the circumstances, but sound.[8] Presenting such testimony either live or through Pagan's prior hearing transcript would have made it more, and not less, likely that the jury would have convicted Rodriguez.
This Court unequivocally finds, therefore, that petitioner Rodriguez has fallen woefully short of proving that the conduct of his able trial counsel in not calling Pagan as a witness at trial or presenting his prior sworn hearing testimony was objectively unreasonable, as is required to satisfy the first prong of the Strickland test. For the same reasons, petitioner Rodriguez has failed to prove, under the second prong ofStrickland, that the conduct of his prior defense counsel resulted in serious prejudice to him, see Statev. Brennan, 627 A.2d 842, 848 (R.I. 1993), or that, but for counsel's failure to call Pagan as a witness or present his prior hearing testimony, the result of the proceeding would have been different. Strickland,466 U.S. at 694. Petitioner Rodriguez's Application for Post-Conviction relief is thus denied in its entirety and dismissed.
Counsel for the parties are directed to confer and submit to the Court forthwith an agreed upon form of order and judgment reflective of this Decision.
[1] The parties presently dispute whether the Court imposed the five year term to serve as a habitual offender consecutive to a ten year term to serve for a total of fifteen years to serve (defendant's position) or consecutive to a fifteen year term to serve for a total of twenty years to serve (the State's position). That issue is the subject of pending cross motions in the underlying criminal case to correct or clarify the sentence imposed.
[2] In its decision, the Supreme Court ordered dismissal of Count 2 of the "indictment." See State v.Rodriguez, 798 A.2d 435 (R.I 2002). As the State charged defendant Rodriguez by criminal information, and not by indictment, however, this Court has interpreted the Supreme Court's order as applying to the criminal information underlying the judgments in this case.
The Supreme Court dismissed Count 2 (conspiracy), at the State's request, even though this Court denied the defendant's Rule 29 motion for judgment of acquittal as to that count at trial and the jury found the defendant guilty, beyond a reasonable doubt, of conspiring with Emiliano Pagan to possess heroin with the intent to deliver. With respect to its dismissal of Count 2, the Supreme Court cautioned that "the state's concession that a conviction should be vacated `does not automatically govern an appellate court's disposition of an appeal.'" Id. at 436 (quoting State v. Smith,797 A.2d 1073 (R.I. 2002)). It reiterated its notice, given only one month before its decision on the appeal in this case, in State v. Smith, that "[i]n future cases wherein the state moves to sustain a defendant's appeal and to vacate a judgment of conviction, the state's motion shall be accompanied by a confession of error specifically denoting the error asserted as a basis for reversal. Further, in any such case, the Court reserves the right to assign the motion to the argument calendar for the Court's independent consideration of the asserted error. . . ." Id. at 436 n. 1 (quoting Statev. Smith, 797 A.2d at 1073). In this case, perhaps because the State filed its request to sustain Rodriguez's appeal and vacate his judgment of conviction as to Count 2 (and a justice of the Supreme Court acceded to that request) before issuance of the Supreme Court's order of notice in State v. Smith, the State filed no confession of error, the Supreme Court allowed the dismissal of Count 2 to stand without inquiry into the basis for the dismissal, and this Court is without knowledge as to the basis for that request or the Supreme Court's order.
[3] In its decision, the Supreme Court ordered dismissal of the appeal and affirmance of the judgments as to Counts 1 and 3 of the "indictment." This Court has interpreted the Supreme Court's order as applying to the criminal information underlying the judgments in this case. See n. 2, supra.
[4] This Court was left to wonder, following the carefully tailored direct examination and rigorous cross examination of Mr. Cicilline, whether defense counsel was content in the post-conviction hearing to throw himself on his proverbial sword, albeit stopping just short of declaring himself ineffective, in an effort to continue his zealous representation of Rodriguez even in the context of an action challenging counsel's own professional conduct.
[5] While counsel to petitioner Rodriguez attempted to suggest that Pagan was unavailable to testify as a witness at the post-conviction hearing, petitioner failed to convince this Court that Pagan was unavailable to so testify within the meaning of Rule 804 b), Rhode Island Rules of Evidence. There is no evidence that petitioner Rodriguez subpoenaed Pagan to testify at the post-conviction hearing scheduled for February 17, 2004. In addition, notwithstanding counsel's statements that Pagan indicated anger and a refusal to testify upon receipt of a prior subpoena, there is insufficient evidence that Pagan failed to appear after service of prior subpoenas for hearing dates in December 2003 and February 9, 2004, as no hearings were convened on those dates. There also is insufficient evidence of attempts to secure Pagan's voluntary appearance on the actual hearing date, through Rodriguez or otherwise, or any explanation of why Pagan may have been willing to sign an affidavit in 1998 and testify for Rodriguez at the July 8, 1998 hearing but unwilling to testify at the post-conviction hearing. This Court is not aware of what attempts, if any, Rodriguez or his prior defense counsel may or may not have made to secure Pagan's appearance for the post-conviction hearing. Petitioner's counsel did not ask this Court to declare Pagan unavailable nor did he seek a continuance to attempt to serve or enforce a subpoena on Pagan that would have required him to appear for the post-conviction hearing before this Court.
[6] Another prerequisite to the admissibility of prior sworn testimony is that the party against whom it is offered must have had the opportunity to develop the prior testimony through cross examination. Rule 804 (b)(1), Rhode Island Rules of Evidence. Here, the State would be hard-pressed to challenge the admissibility of Pagan's prior hearing testimony on that basis because it availed itself of the opportunity to cross-examine Pagan at the prior hearing of July 8, 1998. See Petitioner's Exhibit 3 to Post-Conviction Hearing.
[7] A copy of that transcript, ordered by this Court because the transcript that petitioner Rodriguez put into evidence as Exhibit 3 in the post-conviction hearing was incomplete and misleading, is attached hereto as Appendix A.
[8] Even if this decision, in hindsight, were to appear unwise, it is a tactical decision reflective of a reasonable defense strategy that is clearly within the bounds of what is constitutionally required to constitute effective assistance of counsel. See UnitedStates v. Oliceras, 717 F. 2d 1, 4 (1st Cir. 1983);Bustamante v. Wall, 866 A.2d 516, 522-23 (R.I. 2005);Toole v. State, 748 A.2d 806, 809 (R.I. 2000); Powersv. State, 734 A.2d 508, 522 (R.I. 1999); State v.D'Alo, 477 A.2d 89, 92 (R.I. 1984).